OPINION OF THE COURT
David B. Saxe, J.
The respondent tenant seeks an order of summary judgment dismissing the petition in this holdover proceeding.
The landlord commenced this holdover proceeding in September, 1983 against respondent tenant, Harold Pearl-stein, based upon an alleged notice of termination dated July 25, 1983 that the respondent’s lease term would expire August 31, 1983. The petition was verified on September 22, 1983 by Lawrence S. Borah, Esq., of Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C., attorneys for the petitioner.
During the pendency of this holdover proceeding, the petitioner commenced a second summary proceeding against the respondent with respect to the same premises, this time based on the respondent’s alleged nonpayment of rent. Petitioner alleged in the nonpayment petition that “Respondent(s) Harold Pearlstein is (are) tenant(s) in possession of said premises” and that there is rent due for September, 1983 and October, 1983. Further, Jeffrey Borah, Esq., of the petitioner’s law firm affirmed under penalty of peijury the contents of the petition “that the same *567 are true to his own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true. The grounds of his belief as to matters not stated upon his knowledge are statements and/or records provided by the petitioner, its agents and/or employees and contained in the file in the attorney’s office.” Petitioner was represented again in this proceeding by Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P.C.
The respondent’s counsel argues* that since the commencement of the nonpayment proceeding subsequent to the alleged termination of respondent’s tenancy and during the pendency of the holdover proceeding reinstates and reaffirms the tenancy, that it is a legal impossibility to maintain the holdover action.
In McCoack v Geidel (NYLJ, Nov. 22, 1978, p 15, col 1 [App Term, 2d Dept]) the court stated that “The commencement of the nonpayment proceeding and the allegation of the petition therein are inconsistent with landlord’s previous termination of the tenancy in the holdover proceeding and evinces an intent to revive such tenancy.” The court reached this conclusion despite the existence of a final judgment in the holdover proceeding. The court vacated the final judgment and dismissed the holdover petition. Similarly, in 76 Vermilyea Co. v Brown (Civ Ct, NY County, L&T index No. 21048/83, Aug. 18,1983), following the trial on the holdover proceeding, and prior to the decision, petitioner instituted a nonpayment proceeding against respondent. The petition in the nonpayment proceeding alleged that the respondent remained in possession of the premises “pursuant to a written rental agreement made heretofore.”
The court (Hon. Lewis R. Friedman) found that “the petitioner has apparently chosen to reinstate the tenancy. Thus, this proceeding which is based upon an alleged termination of the lease must be dismissed.” The essential facts in that case are similar to the facts in this case.
In other instances of inadvertence, the courts have looked into the question of intent. For instance in J.A.R. *568 Mgt. Corp. v Foster (109 Misc 2d 693 [App Term, 2d Dept]), and Palew Equities v Rossanes (NYLJ, July 15, 1981, p 7, col 1 [App Term, 1st Dept]), the courts looked to the intent of the landlord to determine whether or not the acceptance of rent would revive a tenancy. However, in these situations, the issue revolved around the passive act of accepting rent. In this case, we have the situation of a landlord and its agents and attorneys performing an entire series of affirmative actions relating to the institution of a nonpayment proceeding. In the instant case, the intent of the landlord is evidenced by the intentional, affirmative acts taken to commence the nonpayment proceeding, or at the very least, the intent of the petitioner must be imputed by these affirmative acts.
Although the landlord here argues that the institution of the nonpayment proceeding was the result of “computer error”, the landlord and its agents engaged in a series of affirmative acts in order to initiate the nonpayment proceeding in question. These steps included writing a demand for rent, serving the rental demand on the respondent, contacting their attorney by telephone or in writing to request and authorize the commencement of a nonpayment proceeding, authorizing the attorneys to verify the petition on their behalf, providing the attorneys with the relevant information, the attorneys’ check of the landlord’s statements and records, affirmatively admitting a landlord-tenant relationship in the proceeding, affirmatively alleging that respondent is the tenant in possession of the premises pursuant to a written rental agreement, the verification of the petition by the attorneys for petitioner, service of the nonpayment petition and notice of petition upon respondent, purchasing of an index number, filing the petition and notice of petition in the court clerk’s office and filing proof of service in the court clerk’s office. In addition, both proceedings were commenced on the landlord’s behalf by the same law firm, Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C. In the verifications in both petitions, the respective attorneys state that the information contained in the petition was provided by petitioner and is contained in the file in the attorney’s office. Surely, the attorneys, when commencing the second *569 proceeding, knew of the existence of the first proceeding. Since the attorneys were acting solely at the behest of the petitioner, this knowledge must be charged to it.
Additionally, it is not only the affirmative acts involved in commencing the nonpayment summary proceeding which reaffirms respondent’s tenancy, but the existence of the nonpayment petition itself which is documentary proof of the existence of respondent’s tenancy. The nonpayment petition is a document, verified by one of the attorneys for the petitioner under the direction of the petitioner and contains many allegations proving the existence of a landlord-tenant relationship. The petition states, among other things, that “Respondent(s) Harold Pearlstein is (are) ten-antis) in possession of said premises pursuant to a written rental agreement made heretofore”; that “said premises are the residence of the tenant(s)”; and that “Said rent has been demanded by 3 day notice in writing from the ten-antis) since same became due copy with proof of service annexed hereto.” The petition is verified by Jeffrey Borah, “one of the attorneys for the petitioner.”
The court in the case of 76 Vermilyea Co. v Brown (supra) made a point of looking to the petition and the allegations contained in it. The court noted that “the petition alleged that the respondent is in possession of the premises ‘pursuant to a written rental agreement made heretofore’ ”, and consequently found that “the petitioner has apparently chosen to reinstate the tenancy”. The allegation contained in the petition in 76 Vermilyea upon which the court relied for its finding that a landlord-tenant relationship existed is precisely the same allegation contained in the instant case.
Similarly in McCoack v Geidel (NYLJ, Nov. 22, 1978, p 15, col 1, supra) the court looked not only to “The commencement of the nonpayment proceeding” but also to “the allegation of the petition therein” and found that they are “inconsistent with landlord’s previous termination of the tenancy in the holdover proceeding and evinces an intent to revive such tenancy.” The court took into consideration the existence of a petition and the allegations contained in it.
The law requires that the petition in a summary proceeding to recover possession of property be verified as a *570 jurisdictional prerequisite to the maintenance of the proceeding. (RPAPL 741.) In the instant case the verification of both the nonpayment petition and the holdover petition was made by attorneys from the same law firm and are thus deemed to be aware of the existence of both proceedings. It is presumed that the attorneys for petitioner were cognizant of the contents of what they were verifying. In fact, each attorney, in verifying each petition affirmed “under penalty of peijury that he has read the foregoing petition and knows the contents thereof”. The verification in the nonpayment proceeding further states that “the grounds of his belief as to matters not stated upon his knowledge are statements and/or records provided by the petitioner, its agents and/or employees and contained in the file in the attorneys office.” It must be assumed that the nonpayment petition was intentionally sent and that the allegations contained therein were intentionally made.
For this court to ignore the meaning of a verification contained in a pleading would be to fly in the face of the Legislature’s intent in requiring a verification. Since I assume that the petition was not falsely verified, the existence of the petition and the verification contained in it imply that not only did petitioner intend to commence the proceeding, but intended and vouched for the accuracy of the statements contained in the petition. The existence of the nonpayment petition, having been brought subsequent to the alleged termination of respondent’s tenancy, is therefore documentary evidence of petitioner’s having reaffirmed respondent’s tenancy.
Accordingly, the petitioner may not maintain this summary holdover proceeding against the respondent and therefore the motion for summary judgment is granted.

 The court wishes to compliment counsel for the respondent on her legal memorandum.