## INVESTMENT & INCOME REALTY, INC. v. BARKLEY

### Case No. CO84-3027

County Court, Orange County

February 7, 1985

### APPEARANCES OF COUNSEL

**Bruce A. Nants** for plaintiff.

**Wilfredo Martinez** for defendant.

### OPINION OF THE COURT

JANIS MARY HALKER, County Judge

This cause came before the Court for trial on January 28 and 30, 1985 on Plaintiff's "Correct Third Amended Complaint for Tenant Eviction" and Defendant's Answer and Affirmative Defenses thereto. Plaintiff, Investment & Income Realty, Inc., a Florida corporation, as agent for Florence Buttenhoff, fee simple owner of rental property, (hereinafter "Landlord") seeks to evict Defendant, Ella Mae Barkley (hereinafter "Tenant") from certain residential property in Orange

County based upon a 15-day notice served November 5, 1984, terminating a month to month tenancy. (Florida Statute 83.57(3)). Tenant's affirmative defenses assert (1) that the Landlord waived the 15-day notice of termination by serving Tenant with a subsequent 3-day notice to "Pay Rent or Move", and (2) that the Landlord's termination of the tenancy was in retaliation for Tenant's complaints to a governmental agency concerning housing code violations on the rental property.

The procedural history of this case can at best be described as unusual. On June 21, 1984, Landlord filed its Complaint for Tenant Eviction for non-payment of June rent. Tenant filed an answer and after the eviction trial, the Complaint was dismissed, in part because the 3-day notice was defective in that it demanded payment of two different amounts of money. However, the Court to which the case was then assigned granted the Landlord thirty days to file an Amended Complaint based upon a new notice.

On August 14, 1984 Landlord filed an "Amended Complaint for Tenant Eviction" based upon a 15-day notice served June 15, 1984 terminating the rental agreement. Tenant filed an Answer asserting as a defense that Landlord accepted rent for July and August, 1984, and thereby reinstated the rental agreement. A trial was never held on these pleadings.[1] Instead, the parties attempted to negotiate a settlement. On September 18, 1984 Landlord's attorney sent to Tenant's attorney a proposed Stipulation for Settlement, the terms of which concern only the payment of money. Ultimately, on October 18, 1984 Tenant's attorney notified Landlord's attorney that the settlement offer would be refused because $150 of what the Landlord was claiming in the proposed Stipulation for Settlement was for attorney fees and costs in connection with a prior eviction proceeding commenced in January, 1984 which the Tenant asserted she never agreed to pay.

On December 17, 1984 Landlord filed a "Second Amended Complaint for Tenant Eviction" for non-payment of rent, but attached a 15-day notice served November 5, 1984 terminating the rental agreement:

You are hereby advised that your rental agreement is terminated effective immediately. You shall have until the last day of this month to vacate the premises.

If you do not vacate the premises on or before the last day of this month you will be holding over in said premises without permission

---

[1] It has now been established the rent was accepted for July and August so a trial would undoubtedly have resulted in a judgment for the Defendant. Florida Statutes 83.56(5).

of the landlord. If you are holding over your rent shall be doubled from its present amount as provided by Florida Statutes 83.58.

Tenant moved to dismiss because the notice attached was inconsistent with the allegations of the complaint. Before hearing on the Motion to Dismiss, Landlord filed, without leave of Court, a "Third Amended Complaint for Tenant Eviction" based upon the 15-day termination notice served November 5, 1984. On January 9, 1985 the Court granted the Motion to Dismiss with leave to amend which resulted in the "Correct Third Amended Complaint for Tenant Eviction" on which the trial proceeded.

Tenant has lived on the subject property for fifteen years pursuant to an oral agreement and pays rent of $200 monthly. Between June 15, 1984 and January 17, 1985 Tenant has made various complaints regarding the condition of the property to the Bureau of Community Improvement of the City of Orlando which is responsible for enforcing the City's Housing Code. When the first termination notice of June 15, 1984 was served, Landlord was not aware of Tenant's complaint to the Bureau. However, the second termination notice of November 5, 1984, on which the instant action is based followed two significant events: First, on October 26, 1984 the Landlord received a Notice from the Bureau that the code violations complained of in June had been corrected.[2] Secondly, three or four days prior to November 5th, a sewer problem developed which caused sewage to back up into the bathtub on the property. Landlord's agent, Ted Moulton, who is responsible for managing the property, was notified by Tenant several times but did not respond.

Mr. Moulton testified that his reason for terminating the rental agreement on November 5, 1984 was the Tenant's use of "abusive and threatening language" toward him and physical attack on him in June, 1984, and the failure of settlement negotiations in October. He testified that when he took over management of the property in October, 1983 he was made aware of an incident in which the Tenant had discharged a firearm on the property and that he was "afraid" of the Tenant. Mr. Barkley, Tenant's brother, testified that the altercation between Tenant and Mr. Moulton occurred when Mr. Moulton walked into Tenant's mother's residence, a property he also manages, uninvited and without knocking, and Tenant simply pushed him out the door. Mr. Barkley

---

[2] On November 28, 1984 upon Tenant's complaint another inspection was conducted and additional violations were found. The Bureau sent notice to the Landlord of compliance on January 15, 1985. On January 17, 1985 another inspection revealed additional violations and the case is now being handled by the Chief Code Inspector.

stated that Mr. Moulton regularly walked into Tenant's and her mother's home uninvited. Mr. Moulton neither admitted nor denied these allegtions.

Mr. Barkley further testified that the shooting incident occurred some three years ago, no one was injured, and there is some evidence Tenant discharged the gun in defense of another. Tenant suffers from depression for which she is being treated by a physician, takes several medications and requires the assistance of her brother in managing her affairs. There is no evidence she is a person of violent character. The Court also notes the June termination notice served after the "pushing incident", mentions only "threatening and abusive language" not a physical attack.

During the pendency of this action, on January 15, 1985 Landlord was notified by the Bureau that repairs for violations complained of in November were completed and Mr. Moulton served Tenant with a 3-day notice to "Pay Rent or Move" on January 15, 1985 as follows:

You are hereby advised that you are indebted to me in the sum of:

. . . . . . . . . . . . . . . . . . . . . . . . $800.00

for the rent and use of the premises stated above and now occupied by you, and that I demand payment of said rent or possession of said premises within 3 days (excluding Saturdays, Sundays, and legal holidays) from the date of delivery of this notice, to wit on or before:

. . . . . . . . . . . . . . . . . . . . . . . . 22 January, 1985

If you do not pay this amount then

. . . . . . . . . . . . . . . . . . . . . . . . you shall be evicted

The landlord shall recover from you all unpaid rent, all charges, all court costs, his attorney fees, all eviction costs, all collection agency fees, and credit bureau costs incurred by the landlord to recover the premises and monies owed.

This notice demands twice the amount of rent due. The rent for December and January of $400 is in the registry of the Court

Landlord is entitled to possession of the property based upon the November 5, 1984 notice terminating the rental agreement unless it is established that (1) the subsequent notice of January 15, 1985 to "Pay Rent or Move" is a waiver of the November 5, 1984 notice of termination, or (2) the termination of the rental agreement was in retaliation for the Tenant's complaints about housing code violations, and the Landlord fails to prove good cause for the termination. Florida Statute 83.64.

54

## A. WAIVER

Waiver is generally defined as the intentional or voluntary relinquishment of a known right, or, conduct that justifies an inference that a known right has been relinquished. *Wilds v. Permenter*, 228 So.2d 408 (Fla. 4th DCA 1969). Although waiver and estoppel are distinct principles, where a valid waiver exists it operates to "estop" or preclude the assertion of the right so waived. *Enfinger v. Order of United Commercial Travelers*, 156 So.2d 38 (Fla 1st DCA 1963). Ordinarily, for a waiver to be valid it must be supported by an agreement with consideration. *Mark v. Hahn*, 177 So.2d 5 (Fla. 1965). However, a valid waiver can exist without an agreement or consideration if it is attended by conduct creating an estoppel. *Mark v. Hahn, supra.* Conduct that will create such an estoppel is "willful or negligent words and admissions, or conduct, acts and acquiescence causing another person to believe in a certain state of things by which such other person is or may be induced to act to his prejudice." *Richards v. Dodge*, 150 So.2d 477 (Fla. 2d DCA 1963).

Viewed in the light of these basic principles governing waiver, it is clear that the Landlord's delivery of the January 15, 1985 notice to "Pay Rent or Move" was not a waiver of the November 5, 1984 Notice of Termination. There being no agreement and consideration for the Landlord's alleged waiver it is necessary for the party asserting the waiver, in this case the Tenant, to have been misled by the second notice and induced to act on it. In this case, since the amount demanded in the Notice to "Pay Rent or Move" is twice the amount of rent that would be due under the rental agreement, the Landlord obviously still considered Tenant to be a holdover tenant as alleged in the "Correct Third Amended Complaint for Tenant Eviction" which demands an award of double rent pursuant to Florida Statute 83.58. Tenant after this second notice and pursuant to a prior court order, deposited $400 into the registry of the Court.[3] No action was filed by the Landlord for non-payment of rent upon expiration of the time to pay in the second notice.

Tenant cites *Brown v. Ferguson*, 132 N.Y.S.2d 4 (App. Div. 1954) and *Reck & Riehl v. Caulfield*, 112 S.W. 843 (Ky. App. 1908) as authority for the proposition that the second notice waived the notice of termination. In *Brown v. Ferguson*, the landlord notified tenant to vacate the property on or before January 1, 1954. At the same time or sometime later, but before January 1, 1954, landlord notified tenant to

---

[3] A different result might have obtained had the tenant tendered the rent to the landlord and sought relief from the court order to deposit the money in the court registry.

vacate on or before February 1, 1954, and, that if tenant did not vacate, the rent would be $425 monthly. Landlord filed suit for eviction on January 8, 1954. The Court held the action was prematurely brought in that the notice to vacate by February 1, 1954 indicated that the premises could be occupied on payment of certain rent. In *Reck & Riehl v. Caulfield* two notices to vacate were given the tenant, one setting a day of May 7, 1907 and the other May 15, 1907. Rent was payable on the 7th of each month. Suit was commenced on May 16, 1907. The court held that the landlord could not recover on the first notice because it was waived by the second notice. Under Kentuckky law, tenant could retain possession under the second notice until June 7, 1907, the next day for payment of rent.

The distinguishing factor in these cases is that at the time suit was filed, the time to vacate under the second notice had not expired. Obviously the prejudice to the tenants is that they remained on the property as allowed by the second notice.

The Court has also considered *Ansonia Associates v. Pearlstein*, 471 NYS 2d 527 (NY City Civ.Ct. 1984). In that case Landlord brought an action in September 1983 to evict a tenant based upon a notice that terminated the tenancy as of August 31, 1983. Subsequently landlord brought an action to evict tenant for non-payment of rent due for September and October 1983. The Court granted summary judgment for the tenant in the first action holding that the filing of the second action for non-payment of rent reaffirmed and reinstated the tenancy previously terminated. The basis of the Court's ruling was its determination that the Landlord intended to revive the tenancy because the verified pleadings in the non-payment action affirmatively asserted that the tenant was in possession of the property as a tenant pursuant to a written agreement. In the instant case, not only was an action never filed on the second notice, but the second notice cannot be read as reviving the tenancy because the rent demanded is not an amount alleged to be in accordance with a prior agreement.

Under the peculiar facts of this case, the Court holds the subsequent notice did not waive the notice of termination because the Landlord did not intend a waiver, and, the Tenant was not induced to act or believe she could stay on the property by paying $400 a month rent. A word of caution is, however, approrpriate lest this decision be read as approval of the indiscriminate serving of conflicting notices by landlords. Such a practice should be discouraged because it creates confusion, and, under other facts may result in barring the landlords' action for eviction.

56

## B. RETALIATORY EVICTION

The evidence clearly supports the conclusion that the Landlord terminated the rental agreement on November 5, 1984 because the Tenant complained to the Bureau of Community Improvement of the City of Orlando about housing code violations and because she complained about the sewer problem. Mr. Moulton's contention that he was "afraid" of the Tenant on November 5, 1984 because of the June incident in which she pushed him out of her mother's home is not reasonable. Mr. Moulton accepted rent for June, July, August, September, October and November for Tenant's use and occupation of the premises. In September he sought to settle the eviction commenced in June on terms that would allow Tenant to retain possession if she would pay attorney's fees for a prior case. Nor is it reasonable to conclude that the Tenant's refusal to pay these fees in violation of a prior agreement was the reason or would provide a good cause for the November termination. Tenant has allegedly owed the attorney's fees since January, 1984 and it has never been alleged in any of the four complaints filed in this case that payment of these fees was part of the rental agreement. Tenant's lease was terminated because after 15 years she had become, in Mr. Moulton's words, a "problem tenant"—a "problem" because after the first set of violations were repaired she complained when sewage backed up into her bathtub indicating a likelihood that she would continue to report violations of the housing code to the proper authorities. Notice of termination swiftly followed these events. Mr. Moulton's subsequent actions corroborate the retaliatory intent. The January 15, 1985 notice to "Pay Rent or Move" was sent shortly after the code violations cited in November were corrected. Finally, the "pushing" incident on which Landlord relies for good cause for the eviction was provoked by Mr. Moulton's own unlawful conduct. Florida Statutes 83.53 provides in part:

(2) The landlord may enter the dwelling unit at any time for the protection or preservation of the premises. The landlord may enter the dwelling unit when necessary for the purposes set forth in subsection (1) under any of the following circumstnaces:

(a) With the consent of the tenant;

(b) In case of emergency;

(c) When the tenant unreasonably withholds consent; or

(d) If the tenant is absent from the premises for a period of time equal to one-half the time for periodic rental payments. If the rent is current and the tenant notified the landlord of an intended absence,

then the landlord may enter only with the consent of the tenant or for the protection or preservation of the premises.

(3) The landlord shall not abuse the right of access nor use it to harass the tenant.

Mr. Moulton's actions not only constitute a trespass but are also violations of the above statute and would support a cause of action for damages against the landlord. See Florida Statute 83.54 and 83.55.

For the foregoing reasons, it is ORDERED AND ADJUDGED that Plaintiff take nothing from its action for eviction and Defendant shall go hence without delay.

Further ORDERED that the court retains jurisdiction to determine the amount of attorney's fees to be awarded Defendant's attorneys pursuant to Florida Statute 83.48.