OPINION OF THE COURT
George M. Heymann, J.
*548 Petitioner commenced this holdover proceeding on the ground that the respondents are not residing in the subject premises as their primary residence. Respondents moved to dismiss for lack of subject matter jurisdiction.
FACTUAL BACKGROUND
On December 31, 1996, petitioner served a notice to tenant of nonrenewal of the lease, termination of tenancy and landlord’s intention to recover possession* advising respondents that their lease is scheduled to expire on April 30, 1997 and that the landlord did not intend to renew it based upon the fact that they were not occupying the premises as their primary or principal place of residence. It further advised them that the landlord intended to commence eviction proceedings on or after May 1, 1997.
On April 14, 1997, petitioner commenced a nonpayment proceeding against Richard and Sibrina Nesbitt which the respondents answered. This matter appeared on the calendar on May 14, 1997 and was thereafter adjourned to May 21,1997.
The instant holdover proceeding was commenced by the service of a notice of petition and petition on May 8, 1997 and appeared on the Part 18 calendar on May 21, 1997.
On May 21, 1997, with both proceedings appearing on the Part 18 calendar, the petitioner, with respondents’ consent, discontinued the nonpayment proceeding. Thereafter, petitioner moved for various relief including dismissal of respondents’ defense of improper service. The matter was then assigned to this part on August 1, 1997.
After oral argument on petitioner’s motion, a traverse hearing was scheduled for September 23, 1997. Prior to the commencement of the traverse hearing, the respondent Sibrina Nesbitt made the instant motion to dismiss.
ISSUE
The question presented to the court is whether the commencement of the nonpayment proceeding, subsequent to the service of the Golub notice and prior to the actual commencement of the instant holdover proceeding, vitiated the predicate notices thus depriving this court of jurisdiction. Neither counsel was able to locate any case on point.
*549 CONCLUSIONS OF LAW
Rent-stabilized tenants are entitled to a renewal lease at the expiration of their lease term unless the landlord/owner refuses to renew the lease for one of the grounds set forth in the Rent Stabilization Code, which includes nonprimary residence (9 NYCRR 2524.4 [c]).
If the landlord/owner does not intend to renew the lease he or she is required to notify the tenant of this intent during the so-called "window period” which is not more than 150 days nor less than 120 days prior to the expiration of the lease (9 NYCRR 2524.2, 2524.4; Golub v Frank, supra).
The law as it has evolved in landlord and tenant cases has enabled some tenants to obtain renewal leases notwithstanding receipt of a Golub notice where, for example, the landlord offered a renewal lease either before or after service of the Golub notice and the tenant executed and returned same to the landlord, even where the landlord claimed clerical error in sending the renewal lease to the tenant (see, Steinmetz v Barnett, 155 Misc 2d 98).
Similarly, and more closely related to the case at bar, holdover proceedings have been terminated where landlords commence nonpayment proceedings after the commencement of the holdover proceeding evidencing an intent to renew the landlord/tenant relationship (see, Ansonia Assocs. v Pearlstein, 122 Misc 2d 566).
The respondent herein relies on the Ansonia case (supra) as the basis for dismissal of this proceeding. In Ansonia the court determined that the holdover proceeding could not be maintained since during the pendency of that proceeding the petitioner landlord commenced a second summary proceeding based on the respondent tenant’s alleged nonpayment of rent. It held that "[t]he existence of the nonpayment petition, having been brought subsequent to the alleged termination of respondent’s tenancy, is therefore documentary evidence of petitioner’s having reaffirmed respondent’s tenancy.” (Supra, at 570.)
The respondent seeks to apply the rationale of Ansonia (supra) to the present circumstances arguing that the commencement of the nonpayment proceeding vitiated the notice of termination thereby depriving this court of jurisdiction.
The distinguishing factor between this matter and Ansonia (supra) and its progeny is that the instant holdover proceeding had not, in fact, been commenced at the time the petitioner commenced the nonpayment proceeding.
*550 The mere service of a notice of intent not to renew a lease accompanied by a notice of termination is not, in and of itself, sufficient to commence a summary proceeding without more. In the special instances where a landlord must serve such notices, at the very least, 120 days before a lease expires, the failure to do so puts the landlord in the untenable position of having to wait for almost the entire new lease period to expire in order to start the process anew. Therefore, in any instance where a landlord intends to pursue a summary proceeding to obtain possession of a rent-stabilized premises at the expiration of a lease it behooves him or her to timely serve such notices. However, at the expiration of the lease, the summary proceeding is not automatically set into motion unless the landlord takes the affirmative steps of serving a notice of petition and petition on the tenant. Thus, there are two preconditions that must occur before it can be determined that a holdover proceeding has been commenced: (1) the lease must, in fact, expire; and (2) the notice of petition and petition must be properly served on the tenant after the expiration of said lease. Until these two factors have occurred the landlord/ tenant relationship remains intact, notwithstanding the landlord’s prior notices advising the tenant of the landlord’s intention not to maintain that relationship. In this regard, it would be highly prejudicial to a landlord if he or she had no recourse to collect rent that becomes due and owing during the tenancy up to the date the lease expires. The right to collect rent is not extinguished by the Golub notices, nor is the legal mechanism for procuring said rent.
The petitioner having commenced a nonpayment proceeding to collect only the rent due through the lease term and having commenced said proceeding prior to the expiration of that term, it is the opinion of the court that such action was not inconsistent with the intent to terminate the tenancy. The petitioner was not seeking anything more than that to which it was legally entitled to during the pendency of the lease. Clearly, it was not the intent of the Legislature to deprive landlords of the opportunity to demand and collect rent for a period of 150 days pending the expiration of a lease solely because of service of a notice of intention not to renew upon one of the grounds enumerated in the Rent Stabilization Code. Had petitioner commenced the nonpayment proceeding subsequent to the expiration of the lease (i.e., May 1, 1997) or sought rent accruing after April 30, 1997, the court would be constrained to reach a different determination as the landlord’s *551 conduct would then signify a desire to resume or maintain the landlord/tenant relationship. Here, however, there is nothing to indicate that the petitioner deviated from its original intent not to renew the lease. Once the lease expired the petitioner promptly commenced this holdover proceeding and immediately sought to discontinue the nonpayment proceeding.
Based on the foregoing, the court concludes that the commencement of the nonpayment proceeding subsequent to the service of the Golub notice but prior to the service of the notice of petition and petition in this proceeding did not vitiate the predicate notices to deprive this court jurisdiction of this matter.
Accordingly, the motion to dismiss is denied.

 Referred to as a Golub notice, service must be made between 150 and 120 days prior to the termination of the lease in effect at that time. (See, Golub v Frank, 65 NY2d 900.)