OPINION OF THE COURT
Kenneth L. Gartner, J.
In thirteenth century England, á plaintiff was required to state his case in “a formal statement bristling with sacramental words an omission of which would be fatal.” (2 Pollock and Maitland, History of English Law, at 605 [1968].) A chronicler of late-twentieth century New York landlord-tenant law might conclude that little had changed, as courts routinely implemented the maxim that, summary proceedings being creatures of statute, notices and petitions commencing them had to be “strictly construed.” In 1984, the Appellate Division, Second Department, in Lanz v Lifrieri (104 AD2d 400, 401), effected what should have been a sea change in this area of jurisprudence when it announced that in order to advance the competing strong public policy favoring resolution of cases on the *753 merits (see, e.g., Wall St. Assocs. v Brodsky, 257 AD2d 526 [1st Dept 1999]; Waterman v Waterman, 128 Misc 2d 665 [Sup Ct, Suffolk County 1985]), “we adopt the reasoning of a recent trend of cases which treat summary proceedings the same as any other type of civil case and which refuse to consider de minimis variations from strict compliance as jurisdictional defects [citations omitted].”
The adoption of this more modern and rational legal philosophy, however, has not been without resistance; it is often overlooked or rejected by cases repeating the old mantra. (See, e.g., MSG Pomp Corp. v Doe, 185 AD2d 798, 800 [1st Dept 1992]; Katz Park Ave. Corp. v Olden, 158 Misc 2d 541 [Civ Ct, NY County 1993]; Balaban v Phillips, 138 Misc 2d 990, 993 [Civ Ct, NY County 1988].) The instant summary nonpayment proceeding, brought against the occupant of a rept-stabilized apartment, raises several unsettled legal issues whose resolution requires a consideration of these competing legal philosophies.
The respondent in this proceeding has admittedly not paid any rent since April 1999. The tenant’s second affirmative defense in the instant proceeding (and the only one which goes to a matter of substance) is that the demised premises violates the statutory and contractual warranty of habitability (Real Property Law § 235-b) thus entitling the tenant to a 75% rent abatement. This court, however, finds as a fact that this affirmative defense is pretextual. The respondent conceded at trial that she did not cease her rental payments for anything having to do with complaints about the condition of the apartment. Her complaints were raised, for the first time, at the eleventh hour in this proceeding. Pursuant to the tenant’s own testimony, the tenant’s problems were almost entirely episodic in nature, and addressed promptly and completely by the landlord upon notification. As to any complaints which might be broader in scope, this court finds the testimony of the landlord and the other witnesses produced by the landlord at the two-day trial of this matter (including the landlord’s superintendent and one of the landlord’s other managerial employees) to have greater credibility.
The merits having been addressed, this court must consider the technical procedural issues raised.
The tenant’s first affirmative defense challenges the standing of the petitioners. The petitioners’ initial response is that the tenant is barred from raising this issue by the doctrine of collateral estoppel, on the ground that in a prior proceeding *754 brought by the same petitioners against this same tenant, another Judge of this court denied a motion to dismiss which was made by the tenant on this same ground. In order for collateral estoppel to apply, however, the issue must be identical to that determined in the prior proceeding; must have been necessarily determined in the prior proceeding, i.e., been essential to that determination; and the litigant must have had a full and fair opportunity to litigate the issue. (Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65 [1969]; 233233 Co. v City of New York, 171 AD2d 492, 496 [1st Dept 1991].) It has been held that where the termination of legal proceedings in favor of a litigant aggrieved by an earlier interlocutory ruling deprives that litigant of the ability to challenge the interlocutory ruling, a “full and fair opportunity” to litigate the issue has not been afforded so as to permit the utilization of the earlier interlocutory ruling for purposes of collateral estoppel in a later litigation. (Morley v Quinones, 208 AD2d 813 [1994].) In Morley, an earlier lawsuit had been brought by one of two plaintiffs who were injured in an occurrence. The defendants had appealed from an interlocutory judgment in the earlier suit which established fault of the respective defendants after a trial on the issue of liability only. However, at a trial on the issue of damages, which occurred while the appeals were pending, the jury determined that the plaintiff did not prove that her damages exceeded the no-fault threshold. The court therefore entered a final judgment dismissing the complaint as against all defendants. Since the defendants were no longer parties aggrieved, their appeals from the interlocutory judgment were necessarily dismissed. Subsequently, Morley, the second plaintiff, sued the same defendants. Morley sought and obtained summary judgment on the issue of liability against the defendants on the ground that the defendants were bound by the collateral estoppel effect of the interlocutory judgment in the prior action. The Appellate Division, however, reversed, determining that due to the defendants’ inability to appeal the interlocutory judgment, it was not sufficiently final to be accorded collateral estoppel effect.
While the Morely holding {supra) has never been applied in a summary proceeding, its applicability is clear. The determination of the prior summary proceeding in favor of the instant respondent deprived the respondent of the ability to challenge, on appeal, the interlocutory order finding the instant petitioners to have standing. The respondent is thus entitled to raise that issue here.
*755 The basis of the respondent’s challenge to the petitioners’ standing is the fact that the petitioners are purportedly “merely the assignees of the rents due the landlord with a possessory interest,” and thus not parties entitled by RPAPL 721 to maintain a summary proceeding. In fact, a review of the assignment document upon which the petitioners rely shows them to be assignees of all of the named landlord’s right, title and interest in the lease. This, however, does not end the issue, but rather raises an area of unsettled law. In Suderov v Ogle (149 Misc 2d 906, 908 [1991]), the Appellate Term, Second Department, concluded that “the issue of whether an assignee of a lease generally may maintain a summary proceeding is far from settled [citations omitted].” The Appellate Term there observed that “[i]t was formerly the law that where the instrument of assignment gave an assignee of rents a right of possession the assignee could maintain a summary proceeding,” but held that “[t]his is no longer the law.” (Supra, at 908.) The Appellate Term concluded that the Legislature’s 1997 deletion from RPAPL 721 of the provision authorizing assignees of a landlord to maintain summary proceedings deprived assignees of rents, even with the right of possession, of the right to maintain summary proceedings. The Appellate Term’s specific holding was that an assignee of leases and rents given as security for a debt had no standing, as the assignor-debtor still held the primary interest, and the assignee was therefore acting as the assignor’s “agent”: “When a lease is assigned as security for a mortgage, no matter what language is used in the instrument of assignment, no transfer of title to the lease can be effected * * * Inasmuch as title is not transferred, the assignment is no more than an assignment of rents and the assignee’s right to possession, if any, is only as an agent of the owner. Accordingly, petitioner is not a party authorized to maintain this proceeding.” (Supra, at 909.) The Appellate Term’s decision in Suderov was subsequently confirmed by the Court of Appeals in Key Bank v Becker (88 NY2d 899 [1996]). The import of these holdings is that someone in an agency capacity is not permitted to maintain a summary proceeding in his own name. (See, Meehan, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 49V2, RPAPL 721, 1999-2000 Interim Pocket Part, at 117.) Required as this court is here to determine the issue specifically left “unsettled” by the Appellate Term in Suderov — i.e., whether an assignee of a lessee who has received title to the lease absolute, rather than as security for a mortgage or other debt, may maintain a proceeding *756 in the assignee’s own name and on the assignee’s own behalf— this court holds that it may. Where, as in the instant case, the assignment is a “true” assignment, with the assignee stepping into all of the rights and obligations of the landlord, the proceeding is brought for the benefit of the petitioner itself, and not as “agent.” (See, Century Realty v Grass, 117 Misc 2d 224 [Civ Ct, NY County 1982] [sublessor with an assignment of the prior leases and the rents has standing under RPAPL 721 to maintain summary proceeding against the lessees of the assigned leases]; Burnee Corp. v Uneeda Pure Orange Drink Co., 132 Misc 435 [App Term, 1st Dept 1928] [same situation, and result, as in Century Realty).) To hold that an assignee could not, under such circumstances, maintain a summary proceeding would, among other things, contravene the specific dictate of Real Property Law § 223 that a lessor’s assignee has the same remedies as would the lessor.
The respondent’s third affirmative defense asserts a novel ground for dismissing the petition.
The respondent’s lease of the premises expired according to its terms on September 30,1999. The respondent was tendered, but never returned, a renewal lease. The petitioners thus assert that the respondent’s tenancy terminated. The petition seeks what it characterizes as use and occupancy for October 1999 and the months thereafter. The respondent maintains that as the form of the proceeding brought on by the petitioners — nonpayment—requires acknowledgment of the relationship of landlord and tenant, the inconsistent allegations made by the petitioners regarding the lack of that relationship deprives this court of jurisdiction.
All of the cases cited by the respondent, however, are ones which address solely the issue of whether the commencement of a nonpayment proceeding vitiates a holdover proceeding, not whether allegations of lease termination vitiate a nonpayment proceeding. (See, e.g., 780 P.P. Assocs. v Roth, 145 Misc 2d 428 [Civ Ct, Bronx County 1989]; Harris v Timecraft Indus., 132 Misc 2d 386 [Civ Ct, NY County 1986]; Ansonia Assocs. v Pearlstein, 122 Misc 2d 566 [Civ Ct, NY County 1984].) If anything, the rationale of these cases might permit the argument that by maintaining this nonpayment proceeding the petitioners have waived any right they might otherwise have to pursue this respondent as a holdover; it does not, however, stand for the reverse.
The case most directly relevant is Glenbriar Co. v Nesbitt (174 Misc 2d 547 [Civ Ct, Bronx County 1997]). In Glenbriar *757 Co. (at 550), the Civil Court held that until the notice of petition and petition in a holdover proceeding are properly served on a rent-stabilized tenant after the expiration of the tenant’s lease, “the landlord/tenant relationship remains intact, notwithstanding the landlord’s prior notices advising the tenant of the landlord’s intention not to maintain that relationship.” In the instant case, the landlord-tenant relationship thus remains intact, notwithstanding the notice of termination and the expiration of the lease term, since no holdover proceeding was ever commenced.
An allegation of lease termination in an amendable petition ought not to be utilizable by a nonpaying tenant to frustrate the landlord’s ability to obtain an adjudication on the merits. The maintenance of this nonpayment proceeding is proper, the characterization of a portion of the rents as “use and occupancy” notwithstanding. (See also, 2657 E. 68th St. Corp. v Bergen Beach Yacht Club, 161 Misc 2d 1031 [Civ Ct, Kings County 1994] [no distinction drawn between monies accepted as “rent” or “use and occupancy”].)
Finally, the respondent relies upon the case of London Terrace Gardens v Stevens (159 Misc 2d 542 [Civ Ct, NY County 1993]) for the proposition that the three-day demand was defective pursuant to RPAPL 711 (2) because it included late charges.
In fact, London Terrace Gardens (supra) would mandate such a result. However, in Brusco v Miller (167 Mise 2d 54 [App Term, 1st Dept 1995]), the Appellate Term unequivocally rejected London Terrace Gardens. As held by the Appellate Term (167 Mise 2d, at 55-56):
“Civil Court, relying upon London Terrace Gardens v Stevens (159 Misc 2d 542), dismissed the petition upon its conclusion that the rent demand was rendered ‘fatally defective’ by its inclusion of attorney’s fees and late charges. We disagree. Consonant with the modern view that pleadings and threshold notices in summary proceedings are to be accorded the same liberal construction as papers in civil litigation generally (Jackson v New York City Hous. Auth., 88 Misc 2d 121; Lanz v Lifrieri, 104 AD2d 400, 401; but cf., MSG Pomp Corp. v Doe, 185 AD2d 798), so that cases may be disposed of on the merits, we discern no defect — and certainly no ‘jurisdictional defect’— which would preclude this garden-variety nonpayment proceeding from going forward.
“ ‘A proper demand for rent must fairly afford the tenant. . . actual notice of the alleged amount due and of the period for *758 which such claim is made’ (Schwartz v Weiss-Newell, 87 Misc 2d 558, 561). That standard has been satisfied here. The itemization of ancillary charges for attorney’s fees and late fees does not represent a demand for ‘illegal’ rent in excess of the stabilized maximum, but permissibly gives notice of landlords’ additional claim for contractual damages provided for in the parties’ lease (see, MacNish Assocs. v Harris, NYLJ, Oct. 27, 1987, at 15, col 4 [App Term, 2d Dept]). These damages, when requested in the rent demand and/or the petition, are a proper subject of recovery in the summary proceeding, albeit they may only be the source of a money judgment in the case of a regulated tenancy (Silber v Schwartzman, 150 Misc 2d [App Term, 1st Dept]).”
As we enter the twenty-first century, then, it appears that landlord-tenant jurisprudence has at long last begun to move out of the thirteenth century. There is nothing to prevent consideration of the merits in this garden-variety nonpayment proceeding.
The petitioners are awarded $8,199.24 in rent arrears, $1,280.08 in late fees and a legal fee of $655 for a total of $10,134.32, judgment of possession, and warrant of eviction.