OPINION OF THE COURT
Kenneth L. Gartner, J.
The respondents tenants in four separate summary holdover proceedings, each commenced by the same petitioner landlord, seek dismissal and sanctions. The holdover proceedings are each based upon the petitioner’s contention that it terminated the tenants’ respective rent-stabilized residential leases as a result of alleged overcrowding.
This landlord’s pursuit of overcrowding petitions against its tenants has been a matter of some controversy, litigation, and media coverage. (See, Latin Tenants: Owner Targeted Us, Newsday, Nov. 30, 2001, at 27.) The respondents are all represented by Nassau-Suffolk Law Services.
Resolution of this particular motion requires this court to address an issue of first impression regarding the res judicata effect of the respective dismissal, and prefiling withdrawal, of two prior holdover proceedings, each alleging termination of the same tenant’s lease for the same reason, upon a subsequent holdover proceeding brought against the same tenant, again alleging termination of the tenant’s lease for the same reason.
Resolution of this motion also requires this court to analyze a decision of the Appellate Term — currently on appeal before the Appellate Division — which the petitioner contends was wrongly decided and likely to be reversed, so that, even if it is required at this time to be followed, any dismissal should now be without the imposition of the sanctions requested by respondent.
In each of the four proceedings at bar, the tenant was served with a combined notice of default/notice of termination *159 terminating the tenant’s lease for violating a maximum occupancy provision of the lease. A holdover proceeding was then instituted. The respondent moved to dismiss on the ground that, inter alia, the landlord had accepted rent from the tenant after the effective date of the lease termination but prior to commencement of the summary proceeding, thus waiving the termination and vitiating the termination notice. The petitioner acknowledged the waiver, and consented to the entry of an order granting the motion and dismissing the proceeding. Despite argument from the respondent that the dismissal should be “with prejudice,” the judge presiding dismissed the petition specifically “without prejudice.”
In each of the four proceedings, the landlord then served a new notice to cure/notice of termination terminating the tenant’s lease for violating a maximum occupancy provision of the lease. A new holdover proceeding was then instituted. However — after process was served but before it was filed with this court — the landlord realized that the petition had not been timely served.
Prior to filing the papers, the landlord therefore re-served them, altering them only by inserting a new and appropriate return date. In order to avoid confusion, the new papers were served together with a letter advising the respondent that the petition served a couple of days earlier was withdrawn, that any prior notices should be disregarded, and that the petition delivered with that letter was returnable on the date set forth in the new notice of petition.
The respondent now moves to dismiss the petition in each of these proceedings on two principal grounds.
The first ground is CPLR 3217 (c). CPLR 3217 (c) provides that if a party, by notice, stipulation or court order, voluntarily discontinues an action after having once previously in any court voluntarily discontinued “an action based on or including the same cause of action,” then the second discontinuance “operates as an adjudication on the merits.” The respondent argues that the petitioner’s consent to the order dismissing the first proceeding should be deemed a “voluntary discontinuance” for these purposes, and that the withdrawal of the second petition prior to filing constituted a second voluntary discontinuance for these purposes. The respondent argues that there has therefore been as a matter of law an adjudication on the merits requiring that the present proceeding — which the respondent would classify as a third proceeding — be barred by res judicata.
*160 According to Siegel, Practice Commentary (McKinney’s Cons Laws of NY, Book 7B, CPLR C3217:15, at 736), “[t]he automatic ‘on the merits’ label that appends to a discontinuance by notice in the second action when a previous discontinuance has been had by any method is another step designed to protect the defendant from harassment. When it is clear that the plaintiff has no harassment in mind in discontinuing the second action by notice, but only a legitimate purpose to effect, the ‘on the merits’ label will be held not to attach.”
In support of this proposition Professor Siegel cites Headley v Noto (45 Misc 2d 284 [Sup Ct, Kings County], affd 24 AD2d 493 [2d Dept 1965]). In Headley, the court held that a complaint would not be dismissed on the ground that the plaintiffs had voluntarily discontinued two previous actions for the same relief since although the plaintiff’s initial discontinuance was strategic (i.e., the discontinuance of a legal counterclaim in order to avoid giving the plaintiff in that otherwise equitable action the right to a jury trial), the plaintiffs had attempted to withdraw the second time because they conceded invalid service of process, not because they were attempting harassment. (Accord, People ex rel. Witty v Warden, Rikers Is. Correctional Facility, 248 AD2d 333, 333 [1st Dept], lv denied 91 NY2d 814 [1998] [CPLR 3217 inapplicable where discontinuance “clearly not for harassment purposes”]; Tortorello v Carlin, 162 AD2d 291, 292 [1st Dept 1990] [same].)
The court in Headley favorably cited New Edgewood Props. v Sachsman (22 Misc 2d 36, 37 [City Ct, NY County 1959]) for the proposition that CPLR 3217 “should not apply to a second and voluntary discontinuance of an action brought in a court which did not have jurisdiction to hear the case on the merits,” and where the defendant “provoked the plaintiff’s step” by asserting the lack of jurisdiction.
In Knightsbridge, LLC v Soups & Breads (NYLJ, Dec. 24, 1997, at 22, col 4 [Civ Ct, NY County]), perhaps the case closest on point to the instant one, the commercial landlord commenced a summary nonpayment proceeding. The landlord then discontinued the nonpayment proceeding for an apparent strategic consideration — to allow it to terminate the lease for nonpayment pursuant to a conditional limitation contained in the lease. After the landlord served the necessary predicate notices to terminate the lease and commenced a summary holdover proceeding, however, the tenant moved to dismiss on the ground, inter alia, that the termination notice was unclear as to who signed the termination notice. Rather than litigate *161 the issue, the petitioner discontinued the proceeding, served a corrected notice of termination, and then commenced a new holdover proceeding based on the new notice. The Civil Court rejected a motion to dismiss made by the respondent on the same CPLR 3217 (c) ground presented by the respondent here, holding that the purpose of the second discontinuance was the correction of a pleading defect, and therefore good cause, not harassment.
In the instant case, this court questions whether the termination of either of the prior proceedings could be categorized as “voluntary discontinuances.”
In the first instance there was the mere failure to oppose the jurisdictional dismissal motion made by the respondent itself, resulting in an order of dismissal.
In the second instance, while there was a voluntary withdrawal, it was made prior to filing or purchase of an index number. This court will not require the purchase of a second, entirely new index number to recommence an action where service under the first one was unsuccessful, because this court recognizes that “[p]laintiifs successive efforts to serve defendant were directed to the proper commencement of only one action, and well recognized as such.” (Interboro Attorney Serv. Corp. v Maler & Assoc., NYLJ, July 21, 2000, at 31, col 1 [Nassau Dist Ct]; Glazer v Seid Revocable Trust, NYLJ, Mar. 7, 2001, at 23, col 6 [Nassau Dist Ct]; Mont v Goldman, 174 Misc 2d 857, 858 [Sup Ct, NY County 1997, Saxe, J.].) By parity of reasoning, the instant petitioner’s efforts were directed to the proper commencement of only one summary proceeding, not the commencement and then discontinuance of one followed by the commencement of a second.
Even more pertinently, however, in contrast to the cited authorities, each of which relieved the plaintiflfs/petitioners of the effects of a CPLR 3217 (c) res judicata bar even where one of the prior discontinuances had admittedly been strategic in nature, here both “voluntary discontinuances” (even if they be viewed as such) were for the purpose of correcting jurisdictional defects — one resulting from the inadvertent acceptance of rent by the petitioner (and raised by the respondents), and one from an error made by petitioner’s process server — and clearly not for purposes of harassment. The case is thus even stronger than in the cited authority to decline to impose dismissal on this basis, and this court does decline to do so. Respondent’s motion to dismiss, insofar as based on this ground, is denied.
*162 The respondents’ second ground for dismissal is the case of ATM One v Landaverde (190 Misc 2d 76 [App Term, 2d Dept 2001]).
Emergency Tenant Protection Regulations (9 NYCRR) § 2504.1 (d) (1) (i) (c) provides that no summary proceeding may be maintained unless the tenant has been given a written notice to cure giving a date for cure “which date shall be no sooner than 10 days following the date such notice to cure is served upon the tenant” (emphasis added). 9 NYCRR 2508.1 (a) provides that “papers may be served * * * by mail * * * ,” and that “when service * * * is made * * * by mail, a contemporaneous affidavit * * * shall constitute sufficient proof of service.” The tenant in the instant case does not dispute that mailing was made 10 days prior to expiration of the stated cure date, but contends that the tenant did not receive the notice until only nine days prior to the cure date.
In Landaverde, the identical situation was presented. In the decision below (NYLJ, Jan. 10, 2001, at 32, col 1 [Nassau Dist Ct]), a judge of this court determined that while 9 NYCRR 2508.1 was dispositive of the manner in which service might be made, it was silent as to the timing of when service would be “deemed” complete. This court (at 32, col 1) expressed concern that to “deem” service complete only upon receipt by the tenant “would create insurmountable problems of proof for petitioners as to when receipt actually occurred,” but also expressed concern that to “deem” service complete upon mailing would deprive the tenant of “the ten (10) day period to cure intended by the regulations.” This court therefore “borrowed” the concept embodied in CPLR 2103 (b) (2) requiring the addition of five days to the period provided if service is made by mail. Since the additional five days had in Landaverde not been allotted by the landlord, this court dismissed the petition.
The Appellate Term affirmed the dismissal, but modified the decision. (190 Misc 2d 76.) The Appellate Term rejected the “borrowing” of CPLR 2103 (b) (2). The Appellate Term observed that CPLR 2103 (b) is by its terms applicable only to papers served on an attorney for a party “in a pending action” (at 77), and therefore inapplicable to the service directly upon a party of a prelitigation notice. The Appellate Term instead applied the well-settled doctrine that “[b]ecause forfeitures of leaseholds are not favored, the rule in real estate matters is that notices to cure and to terminate are deemed given upon delivery, not upon mailing” (190 Misc 2d at 77 [citations omitted]), and on this basis affirmed the dismissal.
*163 The Appellate Term’s decision on the inapplicability of CPLR 2103 (b) (2) is in keeping with existing judicial authority. Under that authority, service by mail is generally, unless provided otherwise, complete upon mailing. (See, e.g., Matter of Fiedelman v New York State Dept. of Health, 58 NY2d 80, 81-83 [1983] [CPLR 2103 inapplicable in ap administrative proceeding so that where CPLR article 78 proceeding was required to be made “within sixty days after service” (emphasis added) of the challenged order, that time would be measured from the date that the order was mailed]; Matter of Express Limousine Serv. v Hennessy, 72 AD2d 864, 865 [3d Dept 1979] [“CPLR 2103 has no application to the service of papers * * * prior to the commencement of a judicial proceeding. Further, section 85 of the Transportation Law provides for the service of orders and it does not provide for any delay when service is by mail” (citation omitted)]; Matter of Carassavas v New York State Dept. of Social Servs., 90 AD2d 630 [3d Dept 1982] [same].) As the Appellate Term aptly concluded, however, there is a contrary rule in real estate forfeiture situations.
As observed by the court in its thorough review of this area in Rocket 18 Parking Corp. v Citivan Enters. Corp. (NYLJ, Feb. 28, 2001, at 20, col 4 [Civ Ct, NY County, Billings, J.]), “DJease provisions specifying how service of notices is effectuated between the parties are enforceable.” (Citations omitted.) The same is true for statutory provisions. (See, Matter of Masse v Masse, 273 AD2d 928, 929 [4th Dept 2000] [reversing Family Court upon a holding that CPLR 2103 (b) (2) is applicable to a notice of registration of an out-of-state child support order, and therefore extends by five days the time for petitioning to stay enforcement of said order, because although the registration is not an action, the Family Court Act is silent as to the manner of giving notice, and section 165 (a) of the Family Court Act provides that in such an instance the CPLR will control].) If the applicable regulations here provided that service would be considered given on the date of mailing, such a provision would thus control. However, the lower court’s observation in Landaverde that in the instant case the regulations are silent is correct.
This situation is analogous to that presented in 98 Delancey St. Corp. v Barocas (82 NYS2d 802 [Sup Ct, NY County 1948]), the case relied upon by the Appellate Term in Landaverde and frequently cited as a seminal statement of the “deemed complete upon receipt in real estate forfeiture situations” rule. In 98 Delancey St., the lease provided that the tenant be given *164 five days’ notice of default, and that “[s]uch notice may be given by mail * * * ” (at 805), just as here the regulation provides that the notice must give the tenant 10 days to cure after service, and that service may be made by mail. The court in 98 Delancey St. read this provision as addressing just the permissible manner, and not the time of the deemed effectiveness, of the required act, and thus held the legal presumption applicable. (Accord, Rocket 18 Parking Corp., supra [where lease provided that notice of a certain number of days was required to terminate sublease, and that notices may be given by certified or registered mail, notification deemed complete only upon receipt of notice by tenant].)
With respect to the lower court in Landaverde’s concern about the petitioner’s problems of proof in these “deemed complete upon receipt” situations, Judge Billings noted in Rocket 18 Parking Corp. (at 20, col 4) that “had petitioner availed itself of certified or registered mail, the date of receipt would not be in question * * * Petitioner could have obtained a receipt upon delivery * * * [Petitioner [is not] to be relieved of the consequences for not taking the obvious precautions.”
In addition to the fact that Landaverde would bind this court no matter what its own independent analysis might be, this court therefore respectfully concurs with Landaverde and disagrees that it was wrongly decided. The instant petition must be, and hereby is, dismissed.
The respondents’ request for sanctions pursuant to 22 NYCRR part 130 against petitioner’s counsel, however, is nevertheless denied. This court will not comment on the claims of bad faith, and “selective enforcement,” which might be raised against this petitioner, or evidence presented, in other forums. It is enough to say that in the matter at bar, no evidence has been presented of bad faith on petitioner’s or petitioner’s counsel’s behalf.
The practice of landlord-tenant law in New York is often a minefield for both petitioners and their counsel, and the fact that two prior missteps were taken — one by the petitioner and one by the process server — does not translate into bad faith on the part of either petitioner or counsel. Indeed, the fact that the respondent has now been successful in defeating two consecutive notices given by the petitioner — one as a result of waiver due to the premature postnotice acceptance of the respondents’ rent and one due to a one-day (and vigorously contested) shortfall in the notice time — is more of a comment on the exacting — sometimes maddeningly so — nature of this *165 area of the law, and a positive testament to the abilities of counsel for the respondents, than it is any adverse reflection on the competence or bona fides of petitioner’s counsel. (See, e.g., Metz v Duenas, 183 Misc 2d 751, 752 [Nassau Dist Ct 2000]; see also, Matter of Mennella v Lopez-Torres, 91 NY2d 474, 476 [1998]; Matter of Brusco v Braun, 84 NY2d 674 [1994] [both expressing concern with nisi prius judges imposing unwarranted procedural hurdles upon petitioners].) The explanatory covering letter utilized by petitioner’s counsel when serving the papers which commenced the instant proceeding, to the contrary, reflected the type of “careful draftmanship” reflected in Silverman v Bryan (NYLJ, Nov. 24, 1992, at 39, col 2 [Sup Ct, Nassau County]), and remarked upon in Estis and Robbins, Yellowstone Battlefield (NYLJ, June 1, 1994, at 5, col 2). The dismissal here should in fact not preclude the petitioner from making yet another attempt to serve a proper notice if warranted, and eventually obtaining the opportunity to address the claimed default on the merits. It does not state a case for the imposition of sanctions.