■ 233233 COMPANY, Respondent, v CITY OF NEW YORK, Appellant-Respondent, and EVA SKINNER et al., Respondents-Appellants.—Judgment of the Appellate Term, First Department (Stanley S. Ostrau, P. J., and Edith Miller, J.; Jawn A. Sandifer, J., dissenting), entered March 1, 1990, which reversed the order of Civil Court, New York County (John Stackhouse, J.) entered April 3, 1987, granting the motion by respondents-respondents-appellants Eva Skinner et al. for summary judgment dismissing the landlord's petition and denying respondent-appellant-respondent City of New York's request to terminate its tenancy, and which also reversed the order and judgment (one paper) of the Civil Court, New York County (Norman C. Ryp, J.), entered June 26, 1987 which denied the City of New York's motion for judgment terminating its tenancy, and which granted the City of New York's motion for judgment terminating its tenancy and the tenancies of subtenants and awarded petitioner-respondent-respondent landlord judgment of possession against all parties, is unanimously reversed, on the law, and the orders and judgment of Civil Court reinstated without costs or disbursements.

In the summer of 1970, petitioner-landlord planned to renovate the subject premises at 233 West 15th Street in Manhattan to create eleven studio apartments. These plans were disrupted however, when squatters, supported by local groups, occupied the building seeking to have the City acquire the property and renovate it for low income tenants. Negotiations led to a $234,950, 30-year loan from the City to the landlord for the purpose of renovating the building into apartments for low income tenants. The City was to operate the premises under a net lease. The plans were apparently designed to provide for the long-term residency of the subtenant squatters. The March 16, 1971 loan contract called for monthly repayment installments and completion of renovations in accordance with City specifications. Paragraph 20 of the mortgage of the same date, securing the note, provided:

"The mortgagor agrees that so long as any part of the mortgage debt remains unpaid, or any tax exemption or tax abatement granted as a result of the installation or improvements made pursuant to Article 8 of the Private Housing Finance Law of the State of New York remains in effect, or

for a period of at least 10 years from the date of issuance of the Certificate of Occupancy to be issued, whichever of the foregoing is the later date, that * * *

"(c) No charge or rental for housing accommodations in such multiple dwelling shall be made or charged in excess of the maximum rentals prescribed by the New York City Rent and Rehabilitation Administration and the housing accommodations shall be subject to the provisions of the New York City Rent Control Law and the regulations promulgated thereunder during such period."

There is no dispute that the 30-year loan has not been repaid in full.

In December 1972, petitioner-landlord and the City entered into a one-year renewable lease for the premises. The City was to pay $1,690 per month rent or, in return for a reduced net payment from the City of $5,000 per year, petitioner-landlord could at its election be relieved of its obligation to manage the property and to make mortgage payments to the City. The lease provided that it was subject to and subordinate to all mortgages. Paragraph 7 (h) of the lease provided the lease was solely between the landlord and the City agency and that nothing therein should be construed to establish a landlord-tenant relationship between landlord and the subtenants. Paragraph 14 of the lease stated the City agency was to be deemed a month-to-month tenant at the end of the term of the lease and that the City undertook to remove subtenants who remained in possession of an apartment beyond the term of the main lease.

Petitioner-landlord promptly exercised its right of election to receive $5,000 per year net, rather than manage the building and make mortgage payments. The net lease arrangement was approved pursuant to a resolution of the Board of Estimate in December 1971 authorizing the City to enter into one year leases for housing units for the purpose of sub-leasing properties to low income tenants. However, at the expiration of the first one-year term, on November 30, 1973, the renewal option was never exercised and the Board of Estimate never authorized any renewal. Yet, even though there was no written extension, the City continued to pay the landlord $5,000 per year, manage the premises and make mortgage payments for landlord. The subtenants continued in possession. After New York State adopted a flat grant system in 1976 which reduced available funds, the City stopped making repairs. The subtenants in response commenced a rent strike in November

1977. The City then stopped paying rent due to the Owner under the lease or to meet its mortgage obligations.

In September 1978, the owner commenced a summary non-payment eviction proceeding against the City and subtenants. The Civil Court in August 1979 struck the City's affirmative defense of surrender of possession to the landlord and directed the City to maintain the building. It found that a surrender of possession was barred in the absence of removal of the subtenants or the owner's consent to the subtenants' continued occupancy. Accordingly, the City could not be relieved of its obligations of tenancy for rent payments and building mainte- nance. The court also "[p]arenthetically * * * observed" the City would not be allowed to remove the subtenants on merely one month's notice, as due process required the governmental entity to demonstrate reasonable grounds and good cause for eviction. Although the court in its decision had declined to rule on subtenants' motion to require the City to protect their occupancy, in the order settled thereon, the motion was granted.

In the Appellate Term, First Department, the primary issue on appeal was the validity of tenant City of New York's surrender without the removal of the subtenants. While the subtenants argued that they were protected by due process and any eviction would require a demonstration of good cause, they did not claim and no one argued the issue of rent control protection. The Appellate Term modified the Civil Court order by vacating, *inter alia,* the direction that the City protect subtenants' occupancy. As to the primary issue the Appellate Term agreed with Civil Court that tenant City of New York's surrender was ineffective to terminate its tenancy without the removal of the subtenants. It was noted that: "it will be necessary for the City to bring formal eviction proceedings against its subtenants, after serving a thirty-day notice of termination as required by section 232-a of the Real Property Law."

Appellate Term also rejected Civil Court's due process pro- tection determination. After a holdover proceeding by the City and a CPLR article 78 by the subtenants were commenced but not actively pursued, in November 1985, the petitioner-land- lord served notices of termination on both tenant City of New York and the subtenants and commenced this holdover pro- ceeding. The petition alleged absence of rent control due to the rent limitations under the municipal loan but the subten- ants' answer expressly alleged they were protected by rent

control and that the 30-day notices of termination were insufficient on this ground alone.

By decision of July 8, 1986, the Civil Court denied a motion by the subtenants for summary judgment, finding it was bound by Appellate Term's 1980 determination, that a 30-day notice of termination was a proper method of proceeding to evict the subtenants. Thereafter, during the course of the trial of the holdover proceeding, Civil Court at the termination of petitioner-landlord's case, granted subtenants' CPLR 4401 motion for judgment in an order dated January 30, 1987, finding it was not bound by Appellate Term's 1980 decision and denied the City's motion for judgment, again finding there could be no effective surrender while the premises were occupied and that the City had a legal and moral obligation under the lease, mortgage and maintenance agreement.

In an order dated March 30, 1987, Civil Court granted subtenants' motion for reargument of the order dated July 8, 1986, and thereupon found the statement in Appellate Term's 1980 decision, that subtenants could be evicted by means of 30-day notices of termination, was merely dictum and not binding and that subtenants were rent control tenants under the terms of the March 1971 mortgage, which preceded and which was superior to the 1972 lease. Thereafter, in June 1987, Civil Court entered an order and judgment dismissing landlord's petition, denying tenant City of New York's motion for judgment terminating its tenancy and directing the City to manage and maintain the premises. However, in the Appellate Term, Civil Court's orders and judgment were reversed and petitioner-landlord granted a judgment of possession against both tenant City of New York and the subtenants (Ostrau, P. J., and Miller, J.; Sandifer, J., dissenting). The majority found that subtenants' claim of rent control status and protection against eviction was barred by the *res judicata* effect of its 1980 decision. Further, the majority ruled that even if the rent control issue was not barred by *res judicata* the subtenants were not protected by rent control. The majority also rejected the possibility that the tenants were, or after termination of the City's tenancy could be, rent control tenants of petitioner-landlord directly, on the basis that the 1972 lease barred such a direct relationship. The dissenter found that the issue of subtenants' rent control status was not litigated in the prior proceeding and that subtenants were third-party donee beneficiaries of the mortgage clause between landlord and tenant City of New York.

We agree with the dissent in the Appellate Term that the

*res judicata* determination by the majority was erroneous. The rent control status of subtenants therefore must be addressed on the merits. The prior litigation concerned a nonpayment proceeding brought in the face of the subtenants' rent strike and tenant City of New York's failure to pay rent payments due to landlord. The subtenants did not assert any affirmative claim against petitioner-landlord. Nor would rent control status have provided a defense against nonpayment of rent. Thus, there was no claim that subtenants presented or should have presented in the prior litigation. Moreover, the rent control issue determination was not reflected in any of the decretal paragraphs of the Civil Court order under review or the Appellate Term modification in 1980. There is, therefore, absolutely no merit to the City's and landlord's present claim that a finding of rent control protection would destroy or impair the rights established in the initial round of litigation *(see, Schuylkill Fuel Corp. v B. & C. Nieberg Realty Corp.,* 250 NY 304).

As compared with *res judicata,* in order for collateral estoppel-issue preclusion to apply, the issue must be identical to that determined in the prior proceeding; must have been necessarily determined in the prior proceeding, *i.e.,* essential to that determination; and the litigant must have had a full and fair opportunity to litigate the issue *(see, Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65). Appellate Term's 1980 decision as to the proper way to terminate the City's tenancy and to evict subtenants was dictum and was not necessary and essential to its determination. The primary issue in that case was whether the City's surrender was effective. Appellate Term held it was not, as long as the subtenants remained in possession. The subtenants' rent control protection against eviction was immaterial to that issue. Accordingly, the court's discussion was clearly advisory. It is apparent that this dictum was included in Appellate Term's 1980 decision solely to counter Civil Court's remarks that the City had to demonstrate good cause in order to evict the subtenants. However, Civil Court prefaced those remarks with "[p]arenthetically, it is observed". Therefore, any contention that Appellate Term's 1980 rejection of such observations was necessary and essential to its determination is clearly without merit. It is also apparent that Appellate Term erroneously determined a factual issue when it noted: "[i]t would appear that the purpose of the mortgage clause". This was plainly improper especially in the instant matter—a jury case where only the petitioner-landlord had presented its case and subten-

ants had not. If intent was a material issue, we would remand to afford subtenants an opportunity to present their case *(see, Stinson v Hura,* 92 AD2d 525). However, there is no need to resort to evidence of intent since the terms of the mortgage are unambiguous. Indeed, in order to reach its decision, Appellate Term ignored the final clause of paragraph 20 (c) of the mortgage "and the housing accommodations shall be subject to the provisions of the New York City Rent Control Law". Further, as seen by the long-term loan, it is clear the subtenants were to have long-term accommodations and that the City could not terminate the arrangement in as short a period as one year.

Appellate Term also relied on Administrative Code of the City of New York § 26-403 (e) (2) (f), an exemption for accommodations *inter alia,* owned and operated by the City. But, the City does not own the subject premises and, indeed, has attempted to surrender them. There is therefore no basis for the expansive interpretation of this section given by Appellate Term. While the Appellate Term also relied on paragraph 14 of the lease between landlord and tenant City of New York, as being inconsistent with subtenants' rent control status, the lease was executed one year after the mortgage and provided it was subject to and subordinate to the mortgage.

Section 2200.2 (f) (1) (i) of the New York City Rent and Eviction Regulations (9 NYCRR) providing an exemption from rent control for: "[l]eases for entire structures or premises as distinguished from the individual housing accommodations therein contained, wherein more than 25 rooms are rented or offered for rent by any lessee, subleasee or other tenant of such entire structure or premises", is also inapplicable. While these premises have 28 rooms, at most, this would prevent the City being a rent control tenant of the owner. It, however, would not bar the subtenants being rent control tenants of the tenant City of New York. The mortgage made "the housing accommodations*"* (emphasis added) subject to rent control, not the City's lease from the landlord. Further, any claim by the City that this regulation prevents the premises from being rent controlled in any respect at any time, clearly conflicts with Private Housing Finance Law article VIII (and the terms of the mortgage).

The subtenants contend the 30-day notices of termination were inadequate on the ground they may not be evicted without good cause as tenants of governmentally subsidized housing *(Matter of Fuller v Urstadt,* 28 NY2d 315). Appellate Term's rejection of this contention in 1980 is not binding, as it

too was dictum. However, we do not reach this issue in light of our finding as to the present rent controlled status of the subtenants. Concur—Rosenberger, J. P., Wallach, Asch and Kassal, JJ.