OPINION OF THE COURT
Michael D. Stallman, J.
*390 Does a landlord waive its right to maintain an illegal use eviction proceeding by accepting rent, renewing the lease or commencing a nonpayment proceeding after serving a notice of termination?
FACTS
Police executed a search warrant for the subject apartment in December 1994. Over a two-day period, they arrested respondent[1] and another individual and recovered a substantial quantity of cocaine, ammunition and other property asserted to be indicia of a narcotics-related business. The apartment is located in a Federally subsidized building; it is not subject to local rent regulation.
It is undisputed that respondent paid, and petitioner accepted, all rent due through June 1995, and that respondent partially paid, and petitioner accepted, the July and August 1995 rent. On June 28, 1995, respondent and petitioner’s agent signed a one-year renewal lease for a term commencing July 1, 1995.
On January 26, 1996 petitioner served on respondent a notice of termination, that demanded respondent to surrender possession by February 5, 1996. On or about January 30, 1996 petitioner commenced a nonpayment proceeding for arrears dating from August 1995. That proceeding was dismissed on March 4, 1996 because of petitioner’s failure to appear in court.
On or about March 9, 1996 petitioner commenced this illegal use proceeding pursuant to RPAPL 711 (5) and 715 (1) after retaining new counsel. Respondent seeks dismissal, asserting that petitioner waived its right to bring an illegal use proceeding by accepting rent after respondent’s arrest, by renewing respondent’s lease and by commencing a nonpayment proceeding after serving a notice of termination.
STATUTORY BASIS
Real Property Law § 231 (1) is a substantive statute that defines the legal consequence of an illegal use on a tenancy. It provides in pertinent part: "Whenever the lessee or occupant *391 other than the owner of any building or premises, shall use or occupy the same, or any part thereof, for any illegal trade, manufacture or other business, the lease or agreement for the letting or occupancy of such building or premises, or any part thereof shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied.” (Emphasis supplied.)
The statutory use of "void” in Real Property Law § 231 (1) means that, as a matter of substantive law, the illegal activity itself terminates the tenancy. The words "[wjhenever” and "thereupon” mean that the tenant’s right to continued occupancy ends automatically at the time of the illegal use. Thus, it is not a matter of judicial discretion at the time of trial to determine whether or not the tenancy should be ended. In effect, Real Property Law § 231 is a statutorily based, rather than lease-derived, conditional limitation. Although the tenancy is voided by the tenant’s illegal activity, or acquiescence in it, the lease continues to determine the procedural rights of the parties, in the same way that the terms of an expired lease project into a holdover tenancy. (See, 233233 Co. v City of New York, NYLJ, Mar. 7,1990, at 21, col 1 [App Term, 1st Dept], revd on other grounds 171 AD2d 492.)[2]
RPAPL 711 (5) (the Bawdy House Law) provides a procedural remedy for implementing Real Property Law § 231 via a summary proceeding, and substantively expands the grounds for bringing a proceeding. RPAPL 711 (5) authorizes a landlord to commence a summary eviction proceeding if "[t]he premises, or any part thereof, are used or occupied as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade or manufacture or other illegal business.” RPAPL 715 (1) defines a class of additional persons who have standing to assert the claim and grants them legal capacity to commence such a proceeding, if after notice, the owner fails to proceed under RPAPL 711 (5). These potential petitioners include a tenant of any premises within 200 feet, or an enforcement agency of the State or of a State subdivision.
The Bawdy House Law is predicated on a different legal theory from the usual holdover proceeding. It is based on a viola *392 tion of law, not on breach of a lease provision. Therefore, a landlord need not terminate the lease as a condition precedent to bringing on an illegal use eviction proceeding. (See, Murphy v Relaxation Plus Commodore, 83 Misc 2d 838 [App Term, 1st Dept]; Nederlander Theat. Corp. v C.A.M.S. Hotel Corp., NYLJ, Nov. 16, 1981, at 7, col 1 [App Term, 1st Dept].)
I
Respondent contends that petitioner’s postarrest acceptance of rent constitutes a waiver of the grounds of this proceeding.
The doctrine of waiver, by its nature, ordinarily applies to all rights or privileges to which a person is legally entitled, provided such rights or privileges belong to the individual and are intended solely for that individual’s benefit. A waiver may not operate so as to infringe on the rights of others, or to violate public policy. (Matter of Hill, 264 NY 219.)
The concept of waiver is based on contract principles and is applicable to landlord-tenant situations involving a breach of lease. In the typical holdover proceeding, the lease terminates according to its own terms if the tenant breaches the lease by doing a contractually prohibited act or by not doing a required act. To the extent that the lease itself provides that such acts result in the lease’s termination, the parties, having agreed to those terms, are bound by them. If, however, the owner acts in a manner inconsistent with his or her rights under the lease to deem the lease term over, the law implies that the owner waived the right to assert the contractual remedy of lease termination.
As the Court of Appeals explained in Jefpaul Garage Corp. v Presbyterian Hosp. (61 NY2d 442, 447-448 [not an illegal use proceeding]), "[t]he logic underlying this rule is plain enough: the option rests with the landlord to recognize the violation and terminate the tenancy. If he chooses to ignore it and accepts rent with knowledge of the tenant’s violation then the acceptance evidences his waiver and an election to continue the relationship.”
The rule is intended to protect a tenant from being misled by an owner’s conduct inconsistent with the parties’ agreement. In certain situations, an owner’s acceptance of rent may constitute a waiver of objection to a tenant’s breach. (See, e.g., Schwartz v Certified Mgt. Corp., 117 AD2d 521 [1st Dept 1986] [objection to subtenancy held waived]; S&R Two Stage Realty Corp. v Oedipal Rage, NYLJ, Sept. 9, 1987, at 13, col 3 [actual or constructive notice of lease breach]; cf., River Rd. Assocs. v *393 Orenstein, NYLJ, Nov. 21,1990, at 27, col 1 [no waiver of objection to washing machine given nonwaiver clause in lease]; Kodo Props. v Paz, NYLJ, May 6, 1986, at 6, col 1 [App Term, 1st Dept] [no waiver of objection to assignment by acceptance of rent].)
Unlike the usual holdover proceeding, which concerns a preexisting private dispute between the parties, an illegal use proceeding involves a strong public policy: protection of the safety and welfare of neighboring tenants and the community. Indeed, the landlord has a statutory duty to end the illegal conduct, e.g., by commencing an eviction proceeding; an owner can incur liability if he or she does not act. (Real Property Law § 231 [2].)
It would be incorrect to apply the concept of waiver, which evolved in the private breach of lease situation, to an illegal use proceeding, where the rights of others would be adversely affected. In short, the owner’s statutory power to commence an illegal use proceeding is not a private right within the owner’s discretion to forego or relinquish.
Moreover, it would be contrary to public policy to hold that the owner’s inadvertent or deliberate acceptance of rent after commission of an illegal act could operate to waive the illegality, even if the owner’s agents knew of the arrest or the underlying illegality, as respondent asserts. To so hold would be an open invitation to bribery or intimidation of a landlord or managing agent, or collusion between the parties, to the detriment of the community.
II
Respondent contends that petitioner’s act of renewing respondent’s lease (by renewal dated June 28, 1995), with knowledge of respondent’s illegal use of the premises, operates as a waiver of the violation of law which is the basis for this proceeding.
As stated in section I, such a waiver is conceptually inapplicable to an illegal use proceeding. Because the landlord is not permitted unilaterally to continue a tenancy involving an illegal use, a fortiori, the landlord and tenant may not permissibly do so by agreement.[3] Moreover, once a tenancy has become void through illegal use under Real Property Law § 231, it would be contrary to the spirit of the law to permit *394 the parties to reestablish their relationship, whether through collusion, negligence or inadvertence. To validate such a lease renewal would subvert the purpose of the statutory scheme and would leave the community without the full remedy the Legislature intended.
Ill
Respondent argues that petitioner waived its right to maintain this proceeding when it commenced a nonpayment proceeding during the 10-day period set forth in its notice of termination dated January 22, 1996.
Generally, the law does not require service of a notice of termination before commencement of an illegal use eviction proceeding based on RPAPL 711 (5) or 715 (1). (Jackson Terrace Assocs. v Howard, NYLJ, Apr. 7, 1993, at 26, col 2 [App Term, 9th & 10th Jud Dists]; New York County Dist. Attorney’s Off. v Oquendo, 147 Misc 2d 125, 130, citing Murphy v Relaxation Plus Commodore, supra; 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 34.2, at 528 [3d ed].)* *[4] Thus, if no notice is required, its service would be surplusage,[5] not subject to vitiation by a subsequent act by the owner.
Federal regulations generally require service of a termination notice as a predicate for an eviction proceeding concerning Federally subsidized housing such as the instant proceeding.[6] (See, 24 CFR part 882 et seq.)
*395 As explained in section I (id.), the law does not recognize the concept of waiver by an owner’s conduct in the context of an illegal use proceeding. The petitioner’s subsequent commencement of a nonpayment proceeding did not vitiate the functions of the notice of termination in this illegal use proceeding.
Respondent relies on inapposite cases, Ansonia Assocs. v Pearlstein (122 Misc 2d 566) and McCoack v Geidel (NYLJ, Nov. 22, 1978, at 15, col 1 [App Term, 2d Dept]). Those cases did not involve illegal use proceedings; the nonpayment proceedings in those cases were commenced during conventional holdover proceedings based on lease breaches.
New York law has long recognized the inherent inconsistency of a landlord’s terminating a tenancy for breach of a lease, and then commencing a nonpayment proceeding. The general rule, as set forth in Ansonia and McCoack (supra), is motivated by the logical assumption that an owner who has demanded rent acknowledged that the tenancy has continued contrary to the position stated in the notice of termination and the holdover petition. The cases hold that by accepting rent after serving the notice but before serving the holdover petition, the owner revived the tenancy.
Whether commencement of the nonpayment proceeding instead of an illegal use proceeding here was an inadvertant law office failure, as contended by petitioner’s counsel at oral argument, or not, is without legal significance. Public policy forbids a landlord from doing anything to reinstate either an illegal use, or a tenancy terminated by operation of law because of an illegal use. Accordingly, any act by the landlord that under other circumstances would have been viewed as effecting a revival of the tenancy, cannot be permitted to have that legal effect here.
IV
Finally, the doctrine of laches does not bar this illegal use proceeding. Laches is an equitable defense that is inapplicable to this illegal use proceeding.
Because the right to possession terminates at the time of the illegal use, and not at the time of the judicial determination, *396 laches is conceptually inapplicable as a defense to an illegal use proceeding. The issue at the trial is not whether the tenancy should be terminated based on what the tenant may or may not have done 14 months prior to commencement of the proceeding. Rather, the issue at trial is whether the tenant knowingly used, or acquiesced in the use, of his apartment for an illegal trade, business or use. If petitioner is able to prove that at trial, the legal consequence of such a finding would be that the tenancy ended in December 1994. Under those circumstances, respondent derived benefit, not detriment, from any delay. Neither has respondent demonstrated that the passage of time has prejudiced his ability to defend this case.
CONCLUSION
Based upon the foregoing, respondent’s motion to dismiss this proceeding is denied.

. Respondent asserts that the criminal charges against him were dismissed; dismissal would not have collateral estoppel effect so as to bar this proceeding. Not only is the relief sought here different, but the standard of proof and the specific question litigated are different. Additionally, there is no indication that the dismissal of the criminal charges was a dismissal on the merits. (See, Stallman, Former Adjudication [Res Judicata and Collateral Estoppel] in Chase, Weinstein-Korn-Miller CPLR Manual § 25.03 et seq.)

. Otherwise, a tenant could unilaterally void a lease by committing an illegal use, thereby avoiding any obligations flowing from the lease. Thus, it has been held that a landlord must affirmatively elect to treat the tenancy as having been terminated, e.g., by bringing a summary proceeding. (220 W. 42 Assocs. v Cohen, 60 Misc 2d 983, 985.)

. In a 1957 case, a court dismissed an illegal use proceeding based on insufficient proof of alleged illegal activity. By ruling on the merits, the court *394 sub silentio found invalid the defense of post-illegality lease renewal. (See, Janowitz v Jenkins, 8 Misc 2d 1077.)

. Certain regulations governing rent-regulated housing relate to the eviction of tenants for illegal activity. The Rent and Eviction Regulations (9 NYCRR 2204.2 [a] [4]) authorize eviction of rent-controlled tenants based on use of the premises for illegal activity. The Rent Stabilization Code (9 NYCRR 2524.3 [d]) authorizes eviction of tenants in rent-stabilized units based on use of premises for "immoral or illegal purposes.” In an illegal use proceeding commenced pursuant to RPAPL 711 (5) a termination notice has been held required pursuant to Rent Stabilization Code § 2524.2 (c) (2) before a landlord can seek to evict a rent-stabilized tenant. (221 E. 10th St. v Walker, NYLJ, June 3, 1992, at 23, col 4, revd on other grounds NYLJ, June 30, 1993, at 21, col 5 [App Term, 1st Dept].) Those provisions are not applicable here, because the premises are not subject to State rent regulation.

. If a notice of termination is more specific than the allegations in the petition, its incorporation by reference in the petition may serve two purposes: compliance with the statutory requirement that the petition must state the facts upon which the special proceeding is based (RPAPL 741 [4]) and provision of greater notice in fact to the respondent.

. Even in a RPAPL 711 (5) or 715 (1) proceeding, where a notice of termination would not otherwise be required, such a notice has been held to *395 be a necessary predicate if the premises are covered, Federally subsidized accommodations. (Jackson Terrace Assocs. v Paterson, 155 Misc 2d 556, appeal dismissed 159 Misc 2d 637.) Service of such a termination notice in compliance with Federal law is required by supremacy doctrine. (US Const, art VI, cl [2] [Supremacy Clause].) Noncompliance with Federal regulations has not been raised by respondent here and is not at issue.