*987 OPINION OF THE COURT
George M. Heymann, J.
This nonpayment proceeding, which has been pending for over a year, presents the following issue for determination:
Does the commencement of an illegal drug use holdover proceeding, at the behest of the Office of the District Attorney (DA), during the pendency of the instant nonpayment proceeding require dismissal of the nonpayment proceeding and vacatur of the judgment and warrant therein?
Due to the unique nature of illegal drug use holdover proceedings, it is the opinion of this court that dismissal of the nonpayment proceeding is not warranted and that the judgment and warrant remain in full force and effect.
Factual Background
The Nonpayment Proceeding
On January 26, 2006, the petitioner served a three-day rent demand on the respondent. Thereafter, on February 13, 2006, the respondent was served, by conspicuous service, with the petition and notice of petition. The respondent answered “Laid off due to illness” on April 4, 2006 and the matter was placed on the court’s calendar for April 11, 2006 before a different judge. On that date, a default judgment in the amount of $3,106.27 was entered against the respondent.
On May 19, 2006, the respondent obtained an order to show cause (OSC) returnable May 31, 2006. Due to the respondent’s hospitalization, the matter was adjourned to June 20, 2006, the judgment and warrant remaining in full force and effect.
On June 20, 2006, the respondent’s father entered into a stipulation on her behalf with the petitioner’s attorney which contained a six-month payment schedule for $3,276.47 then in arrears, plus the current rent as it came due, commencing July 10, 2006 through December 10, 2006.
On October 23, 2006, the respondent obtained another OSC returnable on November 2, 2006. On that date, another stipulation was entered into which modified the November and December payments and added another payment due January 25, 2007. The arrears on October 23, 2006 were $3,754.41. There was a provision added for the marshal to notify Adult Protective Services (APS) prior to any eviction.
On January 3, 2007, the Department of Social Services (DSS) brought an OSC for the appointment of a guardian ad litem *988 (GAL) and the matter was returnable on January 16, 2007. On that date, the motion was granted on consent and the matter was further adjourned to February 16, 2007. Paragraph 3 of the stipulation between petitioner’s counsel and counsel for DSS provides: “All stays shall remain in effect through the adjourned date, without prejudice to LL commencing a ‘Drug’ holdover, if obligated.” The GAL was appointed on January 19, 2007.
On February 16, 2007, the GAL requested a further adjournment to March 22, 2007 in order to obtain information from APS regarding this case.
On March 22, 2007, the GAL initially requested another three- to four-week adjournment to consult with APS and, upon learning that a drug holdover proceeding had been commenced, made an oral motion for dismissal of this proceeding. The petitioner opposed both requests.
The Holdover Proceeding
Pursuant to a search warrant, executed on September 22, 2006, the police entered the respondent’s apartment and seized various items, including, but not limited to: cocaine, crack pipes, crack cocaine, cocaine from within a hallway safe, heroin, a six-inch knife, a 12-inch knife, and various other drug paraphernalia.
An occupant in the apartment at the time was arrested and charged with one count of criminal sale of a controlled substance in the third degree, and seven counts of criminal possession of a controlled substance in the third, fourth, fifth and seventh degrees.
Thereafter, on October 30, 2006, the DA notified the petitioner that it must commence an illegal drug holdover proceeding against the respondent.
In compliance thereto, the petitioner sent a notice of termination of tenancy to the respondent on January 23, 2007 terminating the tenancy on February 20, 2007.
The holdover proceeding was calendared for March 27, 2007 and has been further adjourned to May 2, 2007 at the request of APS.
Discussion and Conclusion of Law
It is axiomatic that a landlord cannot proceed on two fronts at the same time to seek the eviction of a tenant. The distinction between a nonpayment proceeding and a holdover proceeding is that the former evinces an intent and desire by the *989 petitioner landlord to maintain the existing landlord-tenant relationship, provided that the delinquent tenant extinguishes his or her arrears liability and can continue to pay the current rent as it comes due. The holdover proceeding, on the other hand, is the mechanism utilized when, for various reasons, such as, but not limited to, chronic nonpayment of rent, nuisance, nonprimary residence, illegal subletting, or other conduct or omissions, which if proven, constitute a substantial violation or breach of the lease, the petitioner landlord desires to terminate the tenancy.
Since the intent and result of the two types of proceedings are diametrically opposed to one another, it has been generally held that a nonpayment case must be discontinued if the landlord subsequently decides to commence a holdover proceeding while the former case is pending, and that the commencement of a nonpayment proceeding during the pendency of a holdover proceeding vitiates the holdover proceeding. Clearly, the rationale is that the landlord cannot have it both ways and such actions send mixed signals to the tenant who is entitled to know which of two conflicting theories the landlord intends to pursue.
There are, however, instances that require a different result. For example, in Glenbriar Co. v Nesbitt (174 Misc 2d 547 [1997]), wherein the landlord commenced a nonpayment proceeding after service of a Golub notice[1] but prior to the termination of the lease and the actual commencement of the holdover proceeding, this court held that the predicate notices informing the tenant that the landlord would not be renewing his lease at the expiration of the current term were not vitiated and that both proceedings remained viable. As stated therein (at 550):
“The petitioner having commenced a nonpayment proceeding to collect only the rent due through the lease term and having commenced said proceeding prior to the expiration of that term, it is the opinion of the court that such action was not inconsistent with the intent to terminate the tenancy. The petitioner was not seeking anything more than that , to which it was legally entitled to during the pendency of the lease.”
In that case, had the petitioner commenced the nonpayment proceeding subsequent to the expiration of the lease term, or *990 sought rent for the period after the formal commencement of the holdover proceeding, this court would have been “constrained to reach a different determination as the landlord’s conduct would then signify a desire to resume or maintain the landlord/tenant relationship.” (Id. at 550-551.)
In the case at bar, as is evident by the history of adjournments, stipulations, the appointment of a GAL, etc., the petitioner had no immediate intention of terminating the landlord-tenant relationship. Then, on or about October 30, 2006, the petitioner received a notification from the Kings County District Attorney’s office directing the petitioner to commence an illegal drug use holdover.[2]
The language of Real Property Actions and Proceedings Law § 711 (5) and § 715 (1) and Real Property Law § 231 (1), when called into play by the DA, is mandatory in nature and puts landlords in the unenviable position of pursuing an eviction of tenants that they might otherwise wish to keep as tenants, or face the consequences of becoming respondents themselves. In most instances the DA is not a “party” to the proceeding and oftentimes the DA and the landlord are at odds with each other as to how the case should be resolved.[3] While the landlords are generally amenable to a settlement, the DA usually persists on the trial going forward. This court has previously held that due *991 to the anomalous position of the DA when not a party to the proceeding he has no standing to object to the entry of a stipulation of settlement.[4]
Illegal drug holdover proceedings are sui generis as they relate to the other types of holdovers that are routinely commenced against tenants. Moreover, unlike the grounds in every other type of holdover, the alleged illegal activity in the demised premises automatically voids the tenant’s lease or agreement for the letting or occupancy of the premises by operation of law, as prescribed in Real Property Law § 231 (l).[5]
As this court enunciated in its article eight years ago:[6]
“Although brought under the rubric of a holdover, technically, eviction proceedings predicated on alleged illegal drug activity are not holdovers in that there is no requirement that a tenancy be terminated [in order to commence] such a proceeding. Moreover, illegal use proceedings, as contrasted with the usual holdover proceeding involving disputes between the parties, involve matters of public policy for the ‘. . . protection of the safety and welfare of neighboring tenants and the community.’[7]
Thus, in such proceedings the doctrine of waiver is inapplicable regardless of whether a landlord, after commencing the proceeding, accepts rent, renews the lease or commences a nonpayment proceeding, since it would be against public policy, and such actions cannot operate to waive the already committed illegal acts which statutorily void the lease pursuant to RPL § 231 (l).”[8]
This was reiterated by Justice Gerald Lebovits and Douglass Seidman, Esq., in their recent article wherein they assert:
“Because RPL § 231 (1) terminates a lease automatically, a drug-holdover proceeding is technically not a holdover at all, at least not a typical one. A typical holdover arises from an expired or terminated lease. *992 A drug holdover arises from a landlord-tenant relationship that terminates as a matter of law upon the illegal use of the subject premises. Thus, the waiver doctrine, which affects typical holdovers, is inapplicable to so-called drug holdovers. Laches is no defense, and it is irrelevant whether a landlord, after commencing a drug holdover, accepts rent, begins and even obtains a final judgment in a nonpayment proceeding, or renews a lease.”[9]
Thus, if the subsequent commencement of a nonpayment proceeding has no impact on this type of holdover proceeding, a fortiori, a previously commenced nonpayment proceeding, as is the case herein, should have no bearing on the holdover either. Likewise, the commencement of a holdover proceeding at the behest of the DA for illegal drug activity in or about the subject premises does not, under these unique circumstances, require the dismissal of the pending nonpayment proceeding.
By operation of law, the lease between the parties became void on or about September 22, 2006 when the police executed a search warrant and arrested an occupant of the respondent’s apartment. However, the landlord did not formally terminate the landlord-tenant relationship until February 20, 2007, the date set forth in the termination notice. It is this court’s opinion that, until the landlord-tenant relationship was, in fact, terminated, the petitioner landlord was completely within its rights to collect the rent that was due and owing up to that time.
At this juncture, there is a judgment and warrant currently in effect for arrears totaling $8,010.29 through March 2007. Based on the facts of this case, the court does not find any inconsistency, or legal infirmity, between the nonpayment proceeding and the holdover proceeding and will not vacate the judgment and warrant. However, the court, in its discretion, will limit the amount of arrears that the respondent will be required to pay in order to avoid forfeiture of her apartment to the amount due at the end of February 2007, when the landlord-tenant relationship terminated and the holdover proceeding began, which is $6,946.32 as amended through February 2007.
*993 This is without prejudice to the petitioner, if it be so advised by counsel, to make an appropriate application to the court in the Drug Part, which has jurisdiction over the holdover proceeding, seeking ongoing use and occupancy during the pendency of that proceeding.
Accordingly, the motion by the respondent’s GAL to dismiss this nonpayment proceeding is denied. To the extent that said GAL requested additional time to enable APS to assist the respondent in paying the arrears or relocate her to another apartment, the execution of the warrant is stayed to April 20, 2007 for the respondent to either pay $6,946.32 or vacate the subject premises.
The marshal is directed to notify APS of any scheduled eviction.

. (See, Golub v Frank, 65 NY2d 900 [1985].) Service of the Golub notice must be made between 150 and 90 days (referred to as the window period) prior to the termination of the lease term in effect at that time.

. In relevant part, the DA’s letter to the petitioner stated the following:
“City records indicate that you are the owner of the subject premises. We urge you to review the facts. Unless alternate information is provided, you must begin to initiate eviction proceedings against the tenant. The New York Real Property Actions and Proceedings Law, sections 711 (5) and 715 (1), which requires summary proceedings to evict the tenant(s), subtenant(s), and/or occupant(s) who uses his or her premises for an illegal business, authorizes such action.
“If you do not move to evict, this Office will be prepared to do so and will commence a lawsuit, whereby you, along with the tenant, would be named as respondents. Consequently, you may be hable for a civil penalty of up to $5,000.00, as well as for the cost and fees of the court proceedings.” (Emphasis added.)
As can be seen, failure to comply can subject the landlord to substantial fines, as well as the potential loss of his or her property.

. For a discussion of this issue, see, Heymann, Outside Counsel, Eviction Proceedings for Alleged Illegal Drug Activities: An Overview, NYU, May 28, 1999, at 1, col 1 (the role of the DA); Lebovits and Seidman, Drug Holdover Proceedings: An Overview From “Knew” To “Should Have Known” To “Strict Liability, ” in 5 Finkelstein, Ferrara and Treiman’s Landlord-Tenant Monthly (Issue 2-3), at 3 n 10 (Feb.-Mar. 2007); Kessler, New York Criminal and Civil Forfeitures: Including Narcotics Eviction Proceedings, at 263-265 (Gould Pubis 1999).

. Heymann, Outside Counsel, Eviction Proceedings for Alleged Illegal Drug Activities: An Overview, supra; see, Rochdale Vil. v Harris, 172 Misc 2d 758, 761 (1997).

. This statute only renders the lease void; it contains no provision to commence a summary eviction proceeding. Thus, it is always used in conjunction with RPAPL 711 (5) and 715 (1).

. Heymann, supra at 8, col 1.

. Hudsonview Co. v Jenkins, 169 Misc 2d 389, 393 (1996).

. Ibid.

. Lebovits and Seidman, Drug Holdover Proceedings: An Overview From “Knew” To “Should Have Known” To “Strict Liability,” supra at 4; see also, Heymann, “Diaz” and Eviction Proceedings for Illegal Drug Activities, NYLJ, Mar. 7, 2007, at 4, col 3.