OPINION OF THE COURT
Ava Alterman, J.
This is a holdover proceeding, commenced pursuant to RPAPL 711 (5) and 715 (1) and Real Property Law § 231 (1). The notice of termination alleges that the subject apartment is being used for illegal purposes, specifically, the manufacture and sale of narcotics, in violation of the lease and various provisions of the Limited-Profit Housing Companies Law (Private Housing Finance Law art II).
Petitioner is represented by private counsel. In addition, the District Attorney, Bronx County, has served and filed a notice of appearance as cocounsel for petitioner. Respondents, Alex Green and Tesean Green, represented by Legal Services for New York City-Bronx, move for an order disqualifying the District Attorney as petitioner’s cocounsel. Respondents Tammy Green, “John Doe” and “Jane Doe” have failed to appear.
Respondents argue that the District Attorney is statutorily prohibited from providing legal representation to a private party in a civil proceeding and, moreover, that such representation raises ethical conflicts which warrant the disqualification of the District Attorney as petitioner’s attorney.
“The District Attorney is a constitutional officer chosen by the electors of a county (NY Const, art XIII, § 13) whose statutory duties include one ‘to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed’ (County Law, § 700, subd 1)” (Matter of Dondi v Jones, 40 NY2d 8, 19 [1976]).
County Law § 927 provides that District Attorneys in New York *482 City “shall perform the duties prescribed in section seven hundred of this chapter and such other duties as are prescribed by law.”
County Law § 700 (8), however, prohibits the District Attorney from certain specific activities, stating, in pertinent part, that the District Attorney “shall not engage in the practice of law, act as an arbitrator, referee or compensated mediator in any action or proceeding or matter or engage in the conduct of any other profession or business which interferes with the performance of his duties as district attorney.”
Respondents argue, inter alia, that the District Attorney’s representation of petitioner in this summary proceeding constitutes the practice of law prohibited by County Law § 700 (8).
It should be noted at the outset, that the parties have not treated this matter as a claim of professional misconduct, which must be pursued in an appropriate forum (see e.g. Matter of McDonald, 174 AD2d 942 [3d Dept 1991] [District Attorney continued to engage in his private law practice]). “The members of the profession of the Bar in this State are officers of the New York Supreme Court and the Appellate Division of that court has exclusive jurisdiction to say what constitutes professional misconduct on their part (Judiciary Law, § 90, subd. 2)” (Erie County Water Auth. v Western N.Y. Water Co., 304 NY 342, 346 [1952]). Rather, the parties have addressed the District Attorney’s claim that his authority to represent the petitioner landlord in this proceeding derives from RPAPL 715 and the respondents’ claim regarding the ethical conflicts created by such representation.
As is relevant to the powers of the District Attorney, in relation to an apartment allegedly being used for any illegal trade, business or manufacture, RPAPL 715 (1) reads,
“any duly authorized enforcement agency of the state or of a subdivision thereof, under a duty to enforce the provisions of the penal law or of any state or local law, ordinance, code, rule or regulation relating to buildings, may serve personally upon the owner or landlord of the premises so used or occupied, or upon his agent, a written notice requiring the owner or landlord to make an application for the removal of the person so using or occupying the same. If the owner or landlord or his agent does not make such application within five days thereafter; or, having made it, does not in good faith diligently *483 prosecute it, the person, corporation or enforcement agency giving the notice may bring a proceeding under this article for such removal as though the petitioner were the owner or landlord of the premises, and shall have precedence over any similar proceeding thereafter brought by such owner or landlord or to one theretofore brought by him and not prosecuted diligently and in good faith.”
Further, RPAPL 715 (5) provides,
“For the purposes of a proceeding under this section, an enforcement agency of the state or of a subdivision thereof, which may commence a proceeding under this section, may subpoena witnesses, compel their attendance, examine them under oath before himself or a court and require that any books, records, documents or papers relevant or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules.”
“It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976] [citations omitted]). Where the language is clear and unambiguous, the court may not resort to rules of construction to declare the intent of a statute or to broaden its scope and application (Bender v Jamaica Hosp., 40 NY2d 560 [1976]).
The language of RPAPL 715 is clear and unambiguous. The only authority granted to the District Attorney’s Office is: (1) to serve a notice and commence a proceeding against an offending tenant and a recalcitrant landlord who has failed to diligently proceed in good faith regarding the allegations in the notice; and (2) to exercise its subpoena power to conduct an inquiry in connection with such a proceeding.
Although there is no need to resort to statutory construction in order to interpret and apply the statute in this case, two applicable canons bear mentioning.
“A court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit; and the failure of the Legislature to include a matter within the scope of an act may be construed as *484 an indication that its exclusion was intended.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74.)
“The maxim expressio unius est exclusio alterius is applied in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240).
Article 7 of the RPAPL provides several grounds upon which a landlord may commence a summary eviction proceeding, one of which is the use of an apartment for illegal purposes (RPAPL 711 [5]). A landlord may commence such a proceeding on its own, without any prompting by the District Attorney or any other entities. In enacting RPAPL 715, the Legislature empowered the District Attorney to act in the event that the landlord failed to act diligently and in good faith to evict the offending parties. The statutory powers granted are very specific and do not include the authority to be an attorney for the private landlord in this civil summary eviction proceeding. An irrefutable inference must be drawn that the Legislature intended that the District Attorney’s authority pursuant to County Law §§ 700 and 927 be expanded, but only to the extent specifically set forth in the RPAPL. It must be presumed that the Legislature did not intend to grant the District Attorney the authority to represent landlords who commence summary illegal use proceedings.
The District Attorney argues that if the Legislature intended that enforcement agencies not represent petitioner landlords in illegal use proceedings, “it could have easily written such limitation into RPAPL Section 715(1).” Such interpretation requires accepted statutory construction to stand on its head. By its very nature, the statute prescribes activities. It expands the powers of the District Attorney to be able to take specific action and only under specific circumstances. This statute does not proscribe activities. Thus, the Legislature would not need to list all the possible actions that the District Attorney would be prohibited from taking.
As the Court of Appeals stated 160 years ago, “district attorneys in this state do not hold a common-law office; and they have no powers but such as can be found written in the statute book” (People v Corning, 2 NY 9, 18 [1848]). In more current *485 language, the District Attorney has no common-law duties and may act only pursuant to statute (Matter of Knight [County of Erie], 191 NY 286 [1908]; Davis Constr Corp. v County of Suffolk, 112 Misc 2d 652 [1982], affd 95 AD2d 819 [2d Dept 1983]).
In claiming the right to represent private landlords in illegal use eviction proceedings, the District Attorney seeks to engraft additional powers beyond those specifically granted by the Legislature. “Where the Legislature has spoken, indicating its policy preferences, it is not for courts to superimpose their own. Here, the Legislature has spoken” (Morales v County of Nassau, 94 NY2d 218, 224 [1999]). “Courts are not supposed to legislate under the guise of interpretation” (Bright Homes v Wright, 8 NY2d 157, 162 [1960]).
Pursuant to RPAPL 715 (1), the Legislature has designated “duly authorized enforcement agenc[ies]” (the status of the District Attorney as such an agency has not been challenged) to safeguard the public interest and take appropriate action, if necessary. However, in light of fundamental professional and ethical obligations of public prosecutors and those between private attorneys and their clients, the Legislature surely recognized that the District Attorney cannot properly represent a private landlord, as an advocate, and also maintain the status of enforcement agency, prepared to bring a case against the landlord, if necessary, to protect the public interest.
“It is familiar doctrine that a prosecutor serves a dual role”; he is an advocate, and, as public officer, he is charged with the duty to see that justice is done (People v Pelchat, 62 NY2d 97, 105 [1984]). Prosecutors play a distinctive role in the search for truth, which “gives rise to special responsibilities — constitutional, statutory, ethical, personal — to safeguard, the integrity” of the court process (People v Santorelli, 95 NY2d 412, 421 [2000]).
Pursuant to the Code of Professional Responsibility, public prosecutors have different responsibilities from that of the usual advocate in private practice. Their special duty to seek justice exists because prosecutors represent the sovereign (Code of Professional Responsibility EC 7-13). Every day, in the course of his prosecutorial duties, the District Attorney maintains the balance between being an advocate for the people and searching for truth and justice. These goals are not seen as mutually incompatible.
In the private practice of law, however, the interests of the client are paramount. “A lawyer should represent a client zeal *486 ously within the bounds of the law” (Code of Professional Responsibility Canon 7). For example, if the bounds of the law are uncertain, the attorney-advocate should resolve any doubts in favor of the client (EC 7-3).
“The duty to deal fairly, honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients’ interests over the lawyer’s” (Matter of Cooperman, 83 NY2d 465, 472 [1994] [citation omitted]).
The courts have recognized that RPAPL 715, by its own terms, creates a potentially adversarial relationship between the District Attorney and landlords.
“Far from being an alter ego of the landlord, when the District Attorney is forced to bring a proceeding under RPAPL 715, the landlord must be made an adverse party to such proceeding and the landlord may be liable under RPAPL 715 (4) for substantial civil penalties and the payment of costs and attorneys’ fees” (Kings County Dist. Attorney’s Off. v Freshley, 160 Misc 2d 302, 307 [Civ Ct, Kings County 1993]).
The Appellate Term has reiterated this concept of separate identity and interest in an illegal use proceeding involving the New York City Housing Authority, a quasi-government entity (albeit acting in a landlord capacity), where a closer identity of interest with the District Attorney’s Office might be expected. The court stated that the District Attorney’s Office has a “distinct legal mandate[ ]; the District Attorney is not the alter ego of the landlord in a proceeding under RPAPL 715” (Bronx Dist. Attorney v Jackson, 173 Misc 2d 676, 677 [App Term, 1st Dept 1997], citing Freshley).
Here, the District Attorney sent a letter to petitioner that advised not only of the consequences pursuant to RPAPL 715, including penalties of $5,000, attorneys fees and costs. The letter went on to state,
“[i]n addition, this Office may petition the Housing Court for the appointment of a 7A administrator pursuant to Article 7A of the R.PA.PL. Further, this matter may become the subject of forfeiture proceedings under CPLR. Art. 13-A, Penal Law Article 480.00, or provisions of Federal Law covered by the *487 Comprehensive Crime Control Act of 1984.”
Thus, in effectuating its mandate as a law enforcement agency, the District Attorney’s Office has stated various institutional goals, agendas, and considerations that create a conflict between its statutory mandate to represent the public interest and the professional and ethical mandate to represent the best interests of this particular landlord. A number of ethical considerations contained in the Code of Professional Responsibility are implicated here, which apply not only to government attorneys and public prosecutors, but to all attorneys. EC 5-1 provides that “[t]he professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties.” EC 5-14 through 5-17 advise against the danger that a lawyer’s judgment on behalf of a client could be affected while representing multiple clients with differing interests. EC 5-23 guards against the possibility that the goals and interests of a person or organization who furnishes an attorney to represent another party could affect the independent, professional judgment of the lawyer.
“[0]ftentimes the DA and the landlord are at odds with each other as to how the case should be resolved. While the landlords are generally amenable to a settlement, the DA usually persists on the trial going forward” (Bel Air Leasing L.P. v Kuperblum, 15 Misc 3d 986, 990 [Civ Ct, Kings County 2007]).
In one such instance, a landlord, represented by private counsel, negotiated a probationary settlement with a respondent in a proceeding brought pursuant to RPAPL 715. The agreement would have preserved a long-term tenancy, on condition that the tenant’s offending son continue to be excluded from the apartment for the lengthy period of five years. The District Attorney, although not a party or an attorney to a party in that proceeding, asserted he had the statutory authority to disapprove the stipulation, thus forcing the landlord and tenant to trial. The respondent tenant sought and obtained a declaratory judgment that the District Attorney had no such authority (Perdomo v Morgenthau, 18 Misc 3d 709 [Sup Ct, NY County 2007]).
The District Attorney takes the position that “[i]n the instant matter, all the parties were beyond the possibility of settlement and thus past the point when there could be any alleged tension between the District Attorney and Petitioner over a settlement.” Perhaps this is an appropriate stance to take for a law enforce *488 ment agency. However, an advocate for a private client has an ongoing obligation, throughout the entire court proceeding, to reassess what may be in the best interests of that client. Thus, it is shortsighted for an attorney to completely rule out the possibility of settlement once a trial has commenced. Which is not to say that every case can or should be settled. But, because there may be unanticipated issues, developments or new settlement proposals which cannot be realized until during trial, the attorney must remain open to reevaluating the situation on behalf of the client. In addition, “the lawyer should always remember that the decision whether to [forgo] legally available objectives or methods because of non-legal factors is ultimately for the client and not for the lawyer” (EC 7-8). “Where divided loyalties exist, a lawyer may inadvertently, and despite the best of motives, be influenced and act detrimentally to the client” (Matter of Kelly, 23 NY2d 368, 378 [1968]).
Pursuant to Code of Professional Responsibility DR 4-101 (22 NYCRR 1200.19), an attorney must preserve the confidences and secrets of a client. This requirement is fundamental to the attorney-client fiduciary relationship and the proper function of the legal system; a “client must feel free to discuss anything with his or her lawyer” (EC 4-1). “This unique fiduciary reliance ... is imbued with ultimate trust and confidence” (Matter of Cooperman, 83 NY2d 465, 472 [1994]).
“Without strict enforcement of such high ethical standards, a client would hardly be inclined to discuss his problems freely and in depth with his lawyer, for he would justifiably fear that information he reveals to his lawyer on one day may be used against him on the next. [A lawyer might unconsciously betray a confidence, o]r, out of an excess of good faith, a lawyer might bend too far in the opposite direction, refraining from seizing a legitimate opportunity for fear that such a tactic might give rise to an appearance of impropriety. In neither event would the litigant’s or the public’s interest be well served. The dynamics of litigation are far too subtle, the attorney’s role in that process is far too critical, and the public’s interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer’s representation in a given case” (Emle Indus., Inc. v Patentex, Inc., 478 F2d 562, 570-571 [2d Cir 1973]).
If the District Attorney obtained confidential information about petitioner about the lack of good faith or due diligence, he *489 would either be compelled to consciously violate his landlord client’s confidence by commencing a proceeding against the landlord as a corespondent, or compromise his other obligations to law enforcement and his public interest client, by not betraying that confidence.
In Rochdale Vil. v Harris (172 Misc 2d 758, 762 [Civ Ct, Queens County 1997]), a case relied upon by the District Attorney in support of his appearance as petitioner’s attorney, the court noted this problem between the District Attorney and landlords. The conflict is clear
“if the District Attorney’s office forms the opinion that the petitioner was not acting in good faith or in a diligent manner. The District Attorney’s office would have been privy to the inner workings of the petitioner’s case up to that point and could use such knowledge against the petitioner as a joined respondent in a subsequent proceeding commenced by the District Attorney’s office” (at 762).
Under such circumstances, respondents question the voluntariness of petitioner’s consent to representation by the District Attorney. On a motion to disqualify an attorney, based upon conflicts that prejudice the opposing party, the court must determine whether there has been informed consent sufficient to outweigh the conflict of interests. Where numerous detailed affidavits were submitted from a “highly sophisticated” business entity, with in-house counsel and several outside attorneys, the court found informed consent had been given, after “full disclosure and with full understanding of any risks, advantages and implications” (Develop Don’t Destroy Brooklyn v Empire State Dev. Corp., 31 AD3d 144, 153 [1st Dept 2006]). There was no basis to disqualify a sophisticated business’s law firm after repeated declarations from the party, with its trial strategy in mind, to forgo a particular course for the litigation which would have led to an ethical conflict (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437 [1987]).
The District Attorney states that the representation here is “with the consent, and moreover, at the behest of the Petitioner.” Yet, there is no affidavit submitted from any officer, agent or employee of petitioner indicating any discussion or even awareness of the potential conflicts and consequences of becoming a client of the District Attorney, who would remain in a position to commence or assist in various civil and criminal cases against petitioner’s interests. There is no basis upon which to find informed consent on the part of petitioner.
*490 Also absent from the submissions is a statement by petitioner as to any possible prejudice that might result in the event the District Attorney were disqualified from any further representation. The District Attorney states that if the court were to grant respondents’ disqualification motion, “a natural consequence would be the Court dictating the manner in which the Petitioner should proceed in proving their [sic] prima facie case.” But there is no explanation as to how petitioner’s prima facie case would be affected; such an objection would apply to any motion to disqualify an attorney. There is no suggestion here that the competent and experienced attorneys from petitioner’s well-established private law firm would not be capable of adequately representing petitioner at trial. The employees of the New York City Police Department will still cooperate with petitioner in providing property clerk invoices, laboratory reports and arresting officers for trial, even if the District Attorney is not the landlord’s lawyer. No law enforcement agency’s efforts would be hampered. The District Attorney would still be in a position to assist with gathering evidence and preparing and producing witnesses necessary for trial, even if he were not the landlord’s attorney. If the landlord is not his client, the District Attorney faces no ethical problems in commencing a proceeding against the landlord as corespondent if such action is necessary to protect the safety and well-being of the public.
During oral argument of this motion, an Assistant District Attorney did waive the right to commence a proceeding against petitioner pursuant to RPAPL 715 (1). However, this was only after some prodding by petitioner’s private counsel and none of the other legal consequences and financial penalties mentioned in the District Attorney’s letter were waived.
In an illegal use proceeding, the respondent tenant alleged that the District Attorney was acting as cocounsel to the petitioner landlord and moved for him to be disqualified as such. The District Attorney had not filed a notice of appearance on behalf of the petitioner. Thus, “[t]he law enforcement agency is not bound by any rules of non-disclosure of confidential information or honoring the landlord’s interests over those of its own interests in law enforcement” (East Harlem Pilot Block Bldg. No. 4 HDFC Inc. v Dandy, NYLJ, May 7, 2003, at 17, col 1 [Civ Ct, NY County]). Since an attorney owes the client “undivided loyalty and allegiance,” the conflict between the District Attorney and the landlord “precludes a finding that the District Attorney’s Office acts as co-counsel for petitioner herein” (id. [emphasis added]).
*491 “[A] client who is made fully cognizant of potential (or, occasionally, actual) conflicts, is entitled to take his chances,” unless there is a substantial likelihood of profound conflict, or where policy reasons, such as the public interest is involved (Matter of Kelly, 23 NY2d 368, 378 [1968]). Certain circumstances can “establish such delicate conflicting relationships and inescapable divided loyalties that the likelihood alone of improper conduct or motivation, without any showing of harm and regardless of disclosure and consent,” precludes representation (id.).
The right to choose an attorney “will not yield unless confronted with some overriding competing public interest” (Matter of Abrams [John Anonymous], 62 NY2d 183,196 [1984]). In determining a motion to disqualify an attorney, “[although not pressed by either side,” the court should consider its “duty to protect the integrity of the judicial system and preserve the ethical standards of the legal profession” (id. at 197).
The District Attorney asserts that respondents lack standing to complain of a conflict of interest between the District Attorney and the petitioner or petitioner’s counsel. This general rule “must give way to a maxim that adequately addresses the need to ensure both clients and the general public that lawyers will act within the bounds of ethical conduct” (SMI Indus. Can. Ltd. v Caelter Indus., Inc., 586 F Supp 808, 815 [ND NY 1984]). Thus, “DR 1-103 (A) confers standing on any attorney to challenge a lawyer’s representation of a client” (id.).
The United States Supreme Court has had occasion to recognize the scourge of drug infestation, which “lead[s] to ‘murders, muggings, and other forms of violence against tenants,’ and to the ‘deterioration of the physical environment’ ” (Department of Housing & Urban Development v Rucker, 535 US 125, 134 [2002] [citation omitted]).
The New York State Legislature has enacted a procedure to address these issues through civil, summary eviction proceedings. The District Attorney’s criminal prosecutorial function has been expanded under this statutory scheme as the guardian of the public interest. Through the Narcotics Eviction Unit, the District Attorney’s Office can: identify apartments appropriate for RPAPL 715 eviction proceedings; organize and produce documents necessary for trial; and prepare and arrange for police officer witnesses to appear at trial. In furtherance of the goals of the law enforcement agency and in the public interest, the District Attorney may cooperate with and assist the petitioner *492 landlord. However, as a government attorney, he does not work for the landlord (at taxpayer expense), nor should the public be given that impression.
The Legislature has not authorized the District Attorney to be the landlord’s attorney. In fulfilling an attorney’s obligation to zealously represent the landlord’s interest alone, he would have to waive or otherwise compromise the interests of law enforcement, which in this situation is protecting the safety and well-being of the public.
“[T]he District Attorney [i]s guardian of this public trust” (People v Zimmer, 51 NY2d 390, 396 [1980]).
“[N]o matter how firmly and conscientiously a District Attorney may steel himself against the intrusion of a competing and disqualifying interest, he never can be certain that he has succeeded in isolating himself from the inroads on his subconscious . . .
“[n]o matter the good faith and complete integrity of the District Attorney” {id. at 395).
For all of the foregoing reasons, the motion to disqualify the District Attorney as cocounsel for petitioner is granted.